IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RACHEL KAY KELLER,

     Plaintiff, Counter-Defendant,

vs.                                      No. CV 20-259 KG/SCY

ANDREW F. ARRIETA,

     Defendant, Third-Party Plaintiff,
     Counterclaimant,

vs.

WESLEY G. JOHNSON, SEAN P. MCAFEE,
ERIC HINES, TOM CARSE, COOPER & SCULLY, P.C.,

     Third-Party Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

On September 27, 2017, Defendant Andrew Arrieta filed a complaint in federal district court alleging malpractice against his former divorce attorney.  (Doc. 22) at 4; *see Arrieta v. Bennett, et al.*, 17-CV-986 PJK/KBM, (Doc. 1).  Plaintiff Rachel Kay Keller, Mr. Arrieta's former spouse, alleges that Mr. Arrieta violated the parties' non-disclosure agreement in his malpractice action, disclosing the parties' private divorce negotiations on the court's public record.  (Doc. 22).  As a result, Ms. Keller filed the instant action against Mr. Arrieta, asserting breach of contract claims and breach of the duty of good faith and fair dealing.  *Id.* at 5-9.  In response, Mr. Arrieta asserts that he "relied upon [his malpractice counsel] to identify and understand the application of the [non-disclosure agreements] and to take all steps necessary to prevent it from being violated."  (Doc. 23) at 7-11.

Presently before the Court are Mr. Arrieta's Motions to Dismiss and Points and Authorities in Support (Docs. 6, 24), Motion to Enforce Final Decree (Doc. 25), and Ms. Keller's Motion to File out of Time Response (Doc. 11).  The Motions are now fully briefed.  *See* (Docs. 13, 28, 29, Responses, Docs. 16, 33, 36, Replies, and Doc. 53, Surreply).  The Court notes jurisdiction under 28 U.S.C. § 1332.  Having considered the parties' briefing, the record, and the relevant law, the Court denies as moot Mr. Arrieta's first Motion to Dismiss (Doc. 6) and Ms. Keller's Motion to File out of Time Response (Doc. 11), and denies Mr. Arrieta's second Motion to Dismiss (Doc. 24) and Motion to Enforce Final Decree (Doc. 25).

I.      *Procedural History*

On July 2, 2015, Ms. Keller filed for dissolution of her marriage to Mr. Keller in the New Mexico First Judicial District Court.  (Doc. 22) at 2.  The parties executed a final "Marital Settlement Agreement" (Agreement) on December 28, 2016, and, that same day, the state district court adopted the parties' Agreement in its "Final Decree of Dissolution of Marriage."  *Id.* at 3-4; *see also* (Doc. 6) at 10.  The Agreement included a "Non-Disclosure and Non-Disparagement provision," wherein the parties agreed "not to discuss the details of [the] case, nor the terms of settlement of [the] action, with anyone."  (Doc. 22) at 4.  Furthermore, the parties agreed not to "speak or provide on social media any negative or disparaging comment about the other."  *Id.*

On September 27, 2017, Mr. Arrieta filed a complaint in federal district court claiming his divorce attorney engaged in malpractice.  *Id.* at 4; *see also Arrieta v. Bennett, et al.*, 17-CV-986 PJK/KBM, (Doc. 1).  During the pendency of his malpractice case, Mr. Arrieta "disclosed the parties' [divorce] settlement discussions and the final terms of settlement in great detail," including private medical and therapy records, allegedly breaching the parties' Agreement.

(Doc. 22) at 4-5.  Ms. Keller discovered Mr. Arrieta's malpractice case on October 31, 2019,

when the federal district court's Memorandum Opinion and Order was published online.  *Id.* at 6.

On March 23, 2020, Ms. Keller filed her Complaint in the present case, asserting claims

for "rescission of executory contract," breach of contract, and breach of the duty of good faith

and fair dealing.  (Doc. 1) at 6-8.  In response, on April 20, 2020, Mr. Arrieta filed his first

Motion to Dismiss (Doc. 6), arguing that this Court lacked jurisdiction to consider Ms. Keller's

Complaint, and, her own "concurrent breach" barred her from seeking judicial relief.  (Doc. 6) at

1-8.  On May 5, 2020, Mr. Arrieta filed a "Notice of Completion of Briefing," asserting that no

response was filed to his Motion to Dismiss (Doc. 6) and the motion was, thus, ripe for this

Court's adjudication.  (Doc. 10) at 1.

That same day, Ms. Keller filed her Motion to File out of Time Response (Doc. 11),

explaining that she miscalendared the deadline to respond to Mr. Arrieta's Motion to Dismiss,

and requested a three-day extension of time to respond.  (Doc. 11) at 2.  The following day, on

May 6, 2020, Mr. Arrieta responded, explaining that he opposed Ms. Keller's requested three-

day extension.  (Doc. 13) at 1-2.  Nevertheless, the next day, on May 7, 2020, Ms. Keller filed

her late response to Mr. Arrieta's first Motion to Dismiss (Doc. 6).  (Doc. 14).

Two weeks later, on May 22, 2020, Ms. Keller filed an Amended Complaint, asserting

claims for breach of contract and breach of the duty of good faith and fair dealing.  (Doc. 22) at

7-9 (omitting claim for "breach of rescission of contract"); *see also* (Doc. 21) (granting

unopposed request to amend).  Mr. Arrieta filed an Answer in response to Ms. Keller's Amended

Complaint, asserting four counterclaims against Ms. Keller and adding his former malpractice

counsel as third-party Defendants.  (Doc. 23) at 7-12.  That same day, on June 5, 2020, Mr.

Arrieta also filed his second Motion to Dismiss, repeating the same two grounds for dismissal of

Ms. Keller's original Complaint. *Compare* (Doc. 24) at 1-9 *with* (Doc. 6). Presently, Mr.

Arrieta's two Motions to Dismiss (Docs. 6, 24) remain pending before the Court, as well as Ms.

Keller's Motion to File out of Time Response (Doc. 11), and Mr. Arrieta's Motion to Enforce

Final Decree (Doc. 25), filed September 22, 2020.

II.     *Discussion*

First, as a preliminary matter, "[a]n amended complaint supersedes the original complaint

and renders the original complaint of no legal effect." *Franklin v. Kans. Dep't of Corr.*, 160 Fed.

Appx. 730, 734 (10th Cir. 2005); *accord May v. Segovia*, 929 F.3d 1223, 1229 (10th Cir. 2019)

(explaining that "amended complaint, as the operative complaint, supersedes the original

complaint's allegations"). Therefore, Ms. Keller's Amended Complaint (Doc. 22) superseded

her original Complaint (Doc. 1), upon which Mr. Arrieta's first Motion to Dismiss (Doc. 6) was

premised. As a result, Mr. Arrieta's first Motion to Dismiss (Doc. 6) is "technically moot

because [it is] directed at a pleading that is no longer operative." *See Gotfredson v. Larsen LP*,

432 F.Supp. 2d 1163, 1172 (D. Colo. 2006) (citing *Giles v. United States*, 906 F.2d 1386, 1389

(10th Cir. 1990)); *see also Brumfiel v. U.S. Bank*, 2013 WL 12246738, at *1 (D. Colo.)

(collecting cases) (concluding that "[b]ecause the original complaint has been superseded and

nullified, there is no longer a live dispute about the propriety or merit of the claims asserted

therein; therefore, any motion to dismiss such claims is moot").

Similarly, Ms. Keller's Motion to File out of Time Response (Doc. 11), requesting an

extension of time to respond to Mr. Arrieta's first Motion to Dismiss, is also moot. The Court,

therefore, denies both these Motions (Docs. 6, 11) on procedural grounds. *Accord Bolanos v.*

*Gadsden Indep. Sch. Dist.*, 2006 WL 8444323, at *2 (D.N.M.) (Parker, J.) (denying as moot

motion to dismiss that addressed original complaint rather than amended complaint); *Gillaspy v. Town of Silver City*, 2007 WL 9734808, at *2 (D.N.M.) (Vazquez, J.) (same).

Thus, at present, Mr. Arrieta's second Motion to Dismiss (Doc. 24) and Motion to Enforce Final Decree (Doc. 25) remain pending before this Court.  In his second Motion to Dismiss, Mr. Arrieta asserts that the "domestic relations exception requires dismissal" of Ms. Keller's claims.  (Doc. 24) at 1-6.  In addition, Mr. Arrieta claims Ms. Keller's "concurrent breach of the [N]on-[D]isclosure and [N]on-[D]isparagement clause" prevent her from enforcing its provisions against him.  *Id.* at 6- 9.  Next, in his Motion to Enforce Final Decree, Mr. Arrieta requests enforcement of the parties' Agreement, and argues that Ms. Keller should continue her monthly payments to him under the terms of the divorce decree.  (Doc. 25) at 1-5.  Ms. Keller opposes both Mr. Arrieta's Motions in their entirety.  *See* (Docs. 28, 29).  Accordingly, the Court will address the remaining two Motions in turn.

A.  *Mr. Arrieta's Second Motion to Dismiss (Doc. 24)*

First, procedural questions accompany Mr. Arrieta's second Motion to Dismiss (Doc. 24).  Specifically, Mr. Arrieta filed his second Motion to Dismiss after filing an Answer to Ms. Keller's Amended Complaint.  *See* (Doc. 23, Answer); (Doc. 24, second Motion to Dismiss).  Ordinarily, "it is impermissible under the Federal Rules to submit an answer and thereafter file a Rule 12(b)(6) motion to dismiss."  *Swearingen v. Honeywell, Inc.*, 189 F.Supp. 2d 1189, 1193 (D. Kan. 2002) (citing Fed. R. Civ. P. 12(b)); *see also United States v. Stinson*, 386 F.Supp. 2d 1207, 1211 (W.D. Okla. 2005) (finding motion to dismiss under Rule 12(b)(6) "untimely" when defendant already filed answer).

However, "because Rule 12(h)(2) permits the court to consider 'a defense of failure to state a claim upon which relief can be granted' within a Rule 12(c) motion for judgment on the

5

pleadings, the court [may] treat defendant's motion as if it had been submitted under Rule 12(c)." *Swearingen, Inc.*, 189 F.Supp. 2d at 1193 (collecting cases); *accord Stinson*, 386 F.Supp. 2d at 1211 (interpreting untimely motion to dismiss as motion for judgment on pleadings). Indeed, "[t]he distinction between [Rules 12(b)(6) and 12(c)] is purely one of procedural formality." *Swearingen, Inc.*, 189 F.Supp. 2d at 1193. Mr. Arrieta's contention that the Amended Complaint fails to state a claim is, therefore, properly evaluated under Rule 12(c).

Importantly, though, Mr. Arrieta's first argument for dismissal of Ms. Keller's Amended Complaint is premised on the application of the domestic relations exception, a "prudential limitation on standing." *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11-12 (2004) (abrogated on other grounds) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Mr. Arrieta, thus, invokes the question of this Court's subject matter jurisdiction under Rule 12(b)(1), which may be appropriately raised "at any time" under Rule 12(h)(3). Accordingly, despite the Rule 12(c) standard governing Mr. Arrieta's argument for failure to state a claim, his jurisdictional contentions are properly resolved under the Rule 12(b)(1) standard. *See Swepi, LP v. Mora Cnty., N.M.*, 81 F. Supp. 3d 1075, 1146 (D.N.M. 2015) (Browning, J.) (collecting cases) (explaining that "[n]ormally rule 12(c) motions are determined under the same standard as rule 12(b)(6) motions" but if "motion challenges the Court's subject-matter jurisdiction, it is resolved under rule 12(b)(1)'s standard"). The Court shall, therefore, apply the appropriate standard to each of Mr. Arrieta's two arguments in his second Motion to Dismiss. *See id.* at 1147-48 (explaining court may apply "12(b)(1) standard to certain issues in a motion for judgment on the pleadings while applying a 12(b)(6) standard to other issues") (collecting cases).

*1.   Domestic Relations Exception*

Under Rule 12(b)(1), "motions generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).  Here, the parties agree that Mr. Arrieta's jurisdictional argument, urging the Court to apply the domestic relations exception, challenges the "actual facts" pled in the Amended Complaint.  *See* (Doc. 24) at 2; (Doc. 28) at 4.  Accordingly, the Court "may not presume the truthfulness of [the Complaint's] allegations…. [and] has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Swepi, LP*, 81 F.Supp. 3d at 1121-22 (internal quotation omitted).

The domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Elk Grove Unified Sch. Dist.*, 542 U.S. 1 at 12-13 (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992)).  In addition, "it might be appropriate for the federal courts to decline to hear a case involving 'elements of the domestic relationship,' even when divorce, alimony, or child custody is not strictly at issue." *Id.* at 13 (citing *Ankenbrandt*, 504 U.S. at 705-06).  As a result, it is generally "appropriate for the federal courts to leave delicate issues of domestic relations to the state courts." *Id.*; *see also Wigington v. McCarthy*, 124 F.3d 219, 220 (10th Cir. 1997) (explaining that "federal courts do not have diversity jurisdiction over divorce and alimony decrees and child custody orders") (citing *inter alia Ankenbrandt*, 504 U.S. at 703).

In *Leathers v. Leathers*, the Tenth Circuit clarified the application of the domestic relations exception, explaining that when a claimant requests that "the district court [] reopen, reissue, correct or modify" the divorce decree, the domestic relations exception applies.  856

7

F.3d 729, 756 (10th Cir. 2017).  Conversely, however, the *Leather*'s Court clarified that when "the [district] court enforce[s] the divorce decree according to its terms…. the domestic relations exception is not applicable."  *Id.*  The Tenth Circuit explained that the "Supreme Court has long 'sanctioned the exercise of federal jurisdiction over the enforcement of a domestic-relations decree that has been properly obtained in a state court of competent jurisdiction.'"  *Id.* (quoting *Marshall v. Marshall*, 547 U.S. 293, 307 (2006)).  In this way, the domestic relations exception "covers only 'a narrow range of domestic relations issues,'" and "only 'divorce, alimony, and child custody decrees' remain outside federal jurisdictional bounds."  *Marshall*, 547 U.S. at 307-08 (citing *Ankenbrandt*, 504 U.S. at 701-04).

Here, Ms. Keller's Amended Complaint alleges Mr. Arrieta breached the parties' Agreement.  (Doc. 22) at 1.  This Court plainly cannot undo the parties' Agreement or the state court's divorce decree adopting it:  such an action would infringe on the state's authority and expertise in settling domestic disputes.  *See Blackwell v. Blackwell*, 2011 WL 3584824, at *2 (N.D. Okla.) (applying domestic relations exception when plaintiff challenged "validity of the divorce decree and certain procedural aspects of his divorce proceedings").  However, the Tenth Circuit and United States Supreme Court have explicitly endorsed this Court's jurisdiction to "enforce" such a decree, after its valid execution in state court.  *See Marshall*, 547 U.S. at 307-08; *Vaughan v. Smithson*, 883 F.2d 63, 66 (10th Cir. 1989) (distinguishing cases where federal courts "were only called upon to enforce liquidated obligations after a state court had entered a divorce decree," and those where federal court erroneously "determine[d] in the first instance issues regularly decided in state court domestic relations actions").  Ms. Keller requests the enforcement of a validly entered divorce decree, not the issuance of one.

In contesting this Court's jurisdiction to enforce the parties' Agreement, Mr. Arrieta focuses on Ms. Keller's request for "rescission of the contract from the filing of the original Complaint relieving the parties from any further obligations thereunder." *See* (Doc. 22) at 10. Mr. Arrieta argues that "rescission" of the parties' Agreement is not a viable remedy because canceling the contractual obligations would undermine the state court's ability to decide these matters in the first instance. (Doc. 24) at 1-6. However, the Court notes that Ms. Keller does not evoke rescission of the parties' Agreement as a separate cause of action in her Amended Complaint; rather, it is asserted as a proposed "remedy." *See* (Doc. 22) at 10. At this juncture, Ms. Keller's causes of action remain pending, and, any argument regarding the viability of Ms. Keller's requested remedy is, thus, premature. Instead, the question of remedies is better suited for after adjudication of Ms. Keller's claims and Mr. Arrieta's counterclaims.

At bottom, Ms. Keller alleges that Mr. Arrieta breached the parties' divorce agreement, a validly entered contract in New Mexico. As a diversity case involving a claim for breach of contract, the Court has subject matter jurisdiction. Similarly, Ms. Keller has prudential standing to pursue the allegations raised in her Amended Complaint. For these reasons, the domestic relations exception does not apply.

### 2. *Failure to State A Claim*

Next, Mr. Arrieta asserts that Ms. Keller's "concurrent breach" of the parties' Agreement renders her unable to enforce its provisions against him. (Doc. 24) at 6. This argument, premised on Ms. Keller's "failure to state a claim," is governed by the Rule 12(b)(6) and 12(c) standards. As previously stated, a motion under Rule 12(c) is "treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (citation omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that to survive dismissal, complaint must "state a claim to relief that is plausible on its face"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (citation omitted).

In making this plausibility assessment, courts "accept as true 'all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (citation omitted). As a result, a court "may not dismiss on the ground that it appears unlikely the allegations can be proven." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context." *Id.* at 1248. Accordingly, a court should conduct its plausibility and sufficiency analyses on a case-by-case basis. *See id.* at 1248-49 (explaining that complaint alleging negligence may require less factual support than conspiracy or qualified immunity action).

In support of his second argument, Mr. Arrieta presents "evidence that [Ms. Keller] breached the Non-Disclosure and Non-Disparagement clause of the [Agreement] concurrently with the alleged breach by [Mr.] Arrieta." (Doc. 24) at 6. Mr. Arrieta attaches "a series of text messages," allegedly authored by Ms. Keller, wherein she "makes several negative and disparaging comments about [Mr.] Arrieta suggestive of their disagreements while married." *Id.* at 7. In addition, Mr. Arrieta asserts that Ms. Keller "continued to disparage [him] in a comment

posted on … Instagram." *Id.* This evidence, Mr. Arrieta argues, demonstrates "clear violations of the[] provisions of the Non-Disclosure and Non-Disparagement clause of the [Agreement]." *Id.* Thus, Mr. Arrieta contends that Ms. Keller "cannot seek to enforce the Non-Disclosure and Non-Disparagement clause against [Mr.] Arrieta when she has independently violated it herself." *Id.* at 7-8.

"When ruling on a Rule 12(b)(6) motion, the district court must examine only the plaintiff's complaint." *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). As a result, a court "must determine if the complaint alone is sufficient to state a claim; the district court cannot review matters outside of the complaint." *Id.* (citing *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)). If a court elects to consider "matters outside of the complaint," it must convert the defendant's 12(b)(6) motion to "one for summary judgment under Rule 56." *Id.* (citing *Miller*, 948 F.2d at 1565). However, in electing to convert the defendant's motion to dismiss to one for summary judgment, a court must afford the plaintiff an opportunity "to gather evidence demonstrating the existence of a genuine issue of material fact." *Id.* Such a decision requires adequate "development of the record," to properly consider the propriety of the defendant's request for summary judgment. *See Carter v. Daniels*, 91 Fed. Appx. 83, 85 (10th Cir. 2004) (reversing district court's decision converting dismissal motion to summary judgment motion because, in part, "district court did not adequately develop the record").

Here, Mr. Arrieta urges the Court to consider "matters outside of the complaint," a function that this Court cannot do under the motion to dismiss standard. *See id.* (reversing district court because "court's reference to the 'record' and the fact that this information is not included in [] complaint indicates that the court was considering matters outside of the complaint"). This presentation of conflicting evidence, seeking to undermine the allegations in

Ms. Keller's Amended Complaint, is more aptly considered at the summary judgment stage. At this premature junction, the Court is not inclined to convert Mr. Arrieta's Motion. Rather, he may raise this argument, and present evidence in support, after the parties have both been afforded the opportunity to conduct discovery and engage in additional fact-finding. For these reasons, Mr. Arrieta's second Motion to Dismiss (Doc. 24) is denied.

### B.  *Mr. Arrieta's Motion to Enforce Final Decree (Doc. 25)*

Lastly, before the Court is Mr. Arrieta's Motion to Enforce Final Decree (Doc. 25). In his Motion, Mr. Arrieta requests that this Court hold Ms. Keller in contempt for her failure to continue making monthly payments as mandated by the parties' Agreement. (Doc. 25) at 4. Mr. Arrieta similarly requests that this Court conclude Ms. Keller violated the parties' Agreement and determine that she is liable for her alleged breach. *Id.* In response, Ms. Keller asserts that she is not in contempt of any Order issued by this Court, because the Agreement allegedly breached was executed and entered in state district court. (Doc. 29) at 1-6; *id.* at 5 (explaining "long-standing precedent that issues of contempt must be addressed by the court from which the alleged contempt arises"). In addition, Ms. Keller explains that Mr. Arrieta's requested relief is "premature," because the question of breach has not yet been determined by this Court. *Id.* at 6-8.

In his reply, Mr. Arrieta "concedes that, as a general rule, this Court cannot use contempt powers to punish [Ms.] Keller for her violation of an order or judgment of a New Mexico state district." (Doc. 36) at 3. As a result, Mr. Arrieta morphs his request for "contempt" into what he views as "the functional equivalent … an order directing [Ms.] Keller to continue making the required monthly payments to [Mr.] Arrieta until such a time that a court instructs her not to." *Id.* at 4. Mr. Arrieta, thus, argues for "injunctive relief … to restore the status quo"

between the parties. *Id.* With leave of Court, Ms. Keller filed a surreply, addressing the new argument for a preliminary injunction raised for the first time in Mr. Arrieta's reply. (Doc. 53).

As a preliminary matter, "arguments raised for the first time in a reply brief are waived." *In re: Motor Fuel Temperature Sales Practices Litigation*, 872 F.3d 1094, 1112, n.5 (10th Cir. 2017) (citing *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011)); *see also Bynum v. Munic., City & Cnty. of Denver*, 550 Fed. Appx. 560, 562 (10th Cir. 2013) (declining to address argument raised for first time in reply brief when "argument was omitted in [litigant's] opening brief"). Perhaps more notably, though, in a district already constrained by scarce judicial resources, defense counsel filed a knowingly meritless motion, or otherwise failed to conduct legal research to determine the merits of his motion before filing it before the Court. *See* (Doc. 36) at 3 (conceding that original relief requested in motion was unavailable); *see also Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998) (explaining that under 28 U.S.C. § 1927 court may "insist that the attorney bear the costs of his own lack of care"). Counsel should exercise due diligence in future filings before this Court.

Notwithstanding these procedural defects, the Court notes that Mr. Arrieta's request for a preliminary injunction is also without substantive merit. Principally, to prevail on a preliminary injunction, a plaintiff must show that: "(1) [he] has a substantial likelihood of prevailing on the merits; (2) [he] will suffer irreparable injury if it is denied the injunction; (3) [his] threatened injury outweighs the injury that the opposing party will suffer under the injunction; and (4) an injunction would not be adverse to the public interest." *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1283 (10th Cir. 1996). If the moving party satisfies elements two, three, and four, "the movant may satisfy requirement [one] by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation

and deserving of more deliberate investigation." *Fed. Lands Legal Consortium ex rel. Robart Estate v. United States*, 195 F.3d 1190, 1195 (10th Cir. 1999) (abrogated on substantive due process grounds by *Onyx Prop., LLC v. Board of Cnty. Comms. of Elbert Cnty.*, 838 F.3d 1039, 1043 n.3 (10th Cir. 2016)).

Given the "extraordinary remedy" granted by a court's issuance of a preliminary injunction, "the [movant's] right to relief must be clear and unequivocal." *Chemical Weapons Working Group, Inc. v. U.S. Dep't of the Army*, 111 F.3d 1485, 1489 (10th Cir. 1997). Furthermore, "courts 'disfavor' some preliminary injunctions and so require more of the parties who request them." *Free the Nipple–Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019) (citation omitted). "Disfavored preliminary injunctions don't merely preserve the parties' relative positions pending trial." *Id.* Rather, "a disfavored injunction may exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win." *Id.* "To get a disfavored injunction, the moving party faces a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors: [he] must make a strong showing that these tilt in [his] favor." *Id.* (quotations omitted).

Here, Mr. Arrieta's requested preliminary injunction falls within those disfavored by the Court: it mandates action, namely, Ms. Keller's payment to Mr. Arrieta, and thus, it changes the parties' current "status quo" of nonpayment. As a result, Mr. Arrieta's burden to demonstrate the need for a preliminary injunction is higher than in the "typical" or "ordinary" case. *See id.* (distinguishing between "typical" preliminary injunction standard and "heightened standard" for "disfavored" injunctive requests). Nevertheless, Mr. Arrieta asserts that, in the absence of injunctive relief, he is unable "to meet his monthly financial obligations, including specifically

with respect to housing." (Doc. 36) at 4-5.  Mr. Arrieta's alleged calculable, monetary, harm is insufficient for the extraordinary award of injunctive relief.  *See Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1157 (10th Cir. 2011) (explaining that "economic loss is usually insufficient to constitute irreparable harm").

Indeed, a party's "showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (citation omitted).  In fact, "[t]he purpose of a preliminary injunction is not to remedy past harm but to protect [parties] from irreparable injury that will surely result without their issuance." *Id.* (citation omitted).  "To show a threat of irreparable harm, a [party] must demonstrate 'a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages.'" *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016) (citation omitted).

Also, irreparable harm "occurs if 'the district court cannot remedy [the injury] following a final determination on the merits.'" *Id.* (citation omitted).  The Tenth Circuit has "held that irreparable harm 'does not readily lend itself to definition,' … and is 'not an easy burden to fulfill' …." *Id.* at 751-52 (citations omitted).  However, ordinarily, "economic loss is [] insufficient to constitute irreparable harm." *Crowe & Dunlevy, P.C.*, 640 F.3d at 1157.  Rather, absent exceptional circumstances, economic losses are compensable by monetary damages.  *See id.* at 1157-58 (finding financial harm sufficient to justify preliminary injunction when sovereign immunity would bar later entitlement to monetary damages); *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (finding irreparable harm when plaintiff "would be deprived of control of its real property").

15

The irreparable harm Mr. Arrieta alleges is financial and, thus, ordinarily compensable through monetary damages. Likewise, Mr. Arrieta demonstrates that his owed payments are calculable, and can, therefore, be awarded after resolution of this case on the merits. As a result, Mr. Arrieta's request for computable and reparable monetary damages misses the mark on what is required to sustain injunctive relief. For this reason, the Court denies his Motion to Enforce Final Decree (Doc. 25).

III.    *Conclusion*

In summary, the Court concludes that Mr. Arrieta's first Motion to Dismiss (Doc. 6) and Ms. Keller's Motion to File out of Time Response (Doc. 11) are no longer operative, following the unopposed filing of Ms. Keller's Amended Complaint. In addition, Mr. Arrieta's second Motion to Dismiss (Doc. 24), asserting claims for dismissal under Rule 12(c) and 12(b)(1) is without merit, and the domestic relations exception does not strip this Court of subject matter jurisdiction over Ms. Keller's Amended Complaint. Lastly, the Court determines that Mr. Arrieta's Motion to Enforce Final Decree (Doc. 25), subsequently amended as a request for injunctive relief, fails to demonstrate irreparable harm warranting relief.

IT IS, THEREFORE, ORDERED that

1. Mr. Arrieta's first Motion to Dismiss (Doc. 6) is denied as moot;

2. Ms. Keller's Motion to File out of Time Response (Doc. 11) is denied as moot;

3. Mr. Arrieta's second Motion to Dismiss (Doc. 24) is denied; and

4. Mr. Arrieta's Motion to Enforce Final Decree (Doc. 25) is denied.

_____
UNITED STATES DISTRICT JUDGE