IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RACHEL KAY KELLER,

    Plaintiff,

vs.                                                            Civ. No. 20-259 KG/SCY

ANDREW F. ARRIETA,

    Defendant/Third-Party Plaintiff,

vs.

COOPER & SCULLY, PC; ERIC
HINES; WESLEY G. JOHNSON;
TOM CARSE; and SEAN P. McAFEE,

    Third-Party Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART
## PLAINTIFF'S MOTION TO COMPEL

    This matter comes before the Court on Plaintiff Rachel Kay Keller's Motion to Compel Defendant Arrieta to Provide Discovery, filed May 6, 2021, Doc. 112, and fully briefed June 18, 2021. Docs. 122, 130. Having considered the motions and the relevant law, the Court grants in part and denies in part the motion to compel.

## BACKGROUND

    Plaintiff Rachel Kay Keller and Defendant Andrew Arrieta married on May 18, 2013 and divorced in 2016. This lawsuit is the third in a series between Keller and Arrieta. The first lawsuit was their divorce proceeding that was resolved through a Marital Settlement Agreement ("MSA") executed on December 28, 2016. The MSA includes a non-disclosure and non-disparagement agreement ("NDA") which states, in part, that "the parties agree not to discuss the details of this case, nor the terms of the settlement of this action, with anyone who is not counsel

of record or a trust advisor in this matter." Doc. 90 ¶ 17. The second case arose on September 27, 2017 when Arrieta filed a malpractice lawsuit against his former attorney in the divorce case. That case ended on July 5, 2019 when the Court granted summary judgment in favor of Arrieta's former divorce attorney. *See* 17cv986 PJK/KBM, Doc. 62.

In the present (and third) lawsuit, Keller alleges that Arrieta, by and through his counsel, disclosed the parties' settlement discussions and final terms of the MSA during his malpractice case, in violation of the MSA's non-disclosure agreement. Keller brings claims against Arrieta for breach of contract, breach of good faith and fair dealing, invasion of privacy, and breach of confidence. Doc. 90. Arrieta filed a counterclaim against Keller in which he complains that, in April 2020, Keller stopped making monthly installment payments to him to which he alleges he is entitled under the MSA. Doc. 23. Arrieta alleges that "Keller's unilateral and deliberate action to withhold the monthly installment payments without warning to Arrieta has worked a severe hardship on Arrieta. As a direct consequence of Keller's violation for the Final Decree and breach of the MSA Arrieta has had to invade the corpus of a trust fund of which he is a beneficiary to meet his monthly income needs, thereby suffering a permanent reduction in the funds in the trust which can be invested." *Id.* at 6, ¶ 11. Arrieta also filed a third-party complaint against his former counsel in the malpractice case, asserting that he relied on his counsel to understand the applications of the non-disclosure clause and take all necessary steps to prevent it from being violated. *Id.* at 11, ¶ 11.

On October 6, 2020, the Court entered a scheduling order in the present lawsuit and the parties are currently conducting discovery. Docs. 55, 132.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) permits parties to

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Discovery relevance is "to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 469 (D.N.M. 2018) (internal quotation and citation omitted). And while "relevancy in discovery is broader than that required for admissibility at trial, the object of inquiry must have some evidentiary value" to be discoverable. *Dorato v. Smith*, 163 F. Supp. 3d 837, 865-6 6 (D.N.M. 2015) (quotation marks omitted).

## DISCUSSION

In the present motion, Keller seeks an order compelling Arrieta to provide full and complete discovery responses to several interrogatories and requests for production contained in Plaintiff's First Set of Interrogatories and Requests for Production. During briefing, the parties resolved one disputed question: Interrogatory No. 3. *See* Doc. 130 at 4. Accordingly, the Court denies as moot the motion to compel as to Interrogatory No. 3. The Court will address the other disputed discovery questions in turn.

### 1. Interrogatory No. 1, Request for Production No. 1, and Interrogatory No. 2

Interrogatory No. 1 requests that Defendant Arrieta identify and provide information on all social media platforms on which he has had an account from December 28, 2016 to the present and, commensurately, Request for Production No. 1 seeks complete copies of all social media posts Arrieta made between December 28, 2016 and the present. Doc. 112-2 at 1, 10. Similarly, Interrogatory No. 2 requests that Arrieta identify and provide information on all email accounts, websites, and blogs he has had since December 28, 2016 through the present. *Id.* at 2. Arrieta objects to these requests, asserting that they are unduly burdensome and that the information sought is not relevant.[1] Keller, on the other hand, asserts that the information requested is relevant because it "goes to the very heart of Keller's causes of action, which allege that Arrieta's disclosure of private information about Keller to third parties gave rise to multiple causes of action." *Id.* at 3. In other words, Keller is looking for evidence of "additional breaches to support her claim." Doc. 130.

Keller's complaint specifically alleges that Arrieta disclosed information about the MSA in violation of the non-disclosure clause during his malpractice lawsuit. Keller provides no information to suggest that Arrieta disclosed information about the MSA on any social media or email account or that his social media or email accounts were used during the malpractice case. These discovery requests, therefore, appear to be a fishing expedition through Arrieta's social media and email in order to determine if he has violated the non-disclosure agreement in ways

---

[1] While lodging his relevance objection, Arrieta did provide a partial response to Interrogatory No. 2. He states that he has not maintained any websites or blogs during the specified timeframe and that he has a Gmail account for personal and business purposes. Doc. 112-2 at 2. Keller asserts that this is an incomplete answer because in her review of discovery she has found "reference to additional account information that has not been disclosed." Doc. 112 at 5-6. Even so, for the reasons discussed above, the Court agrees with Arrieta that his email account information is irrelevant.

other than that alleged in the complaint (i.e. at times other than during the malpractice lawsuit). Discovery is "not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." *Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360, 376 (D.N.M. 2018). Here, Keller presents no information to show that Arrieta's social media and email accounts are relevant to her claim that Arrieta violated the NDA during his malpractice suit.

To support her argument that she is entitled to see Arrieta's social media posts, Keller points to the affidavit of Robert Ellison White, Jr., which Arrieta attached as an exhibit to his earlier-filed motion to dismiss. *See* Doc. 6 at 13. In that affidavit, Mr. White states that he was friends with both Keller and Arrieta at the time of their divorce and that Arrieta "informed [him] of their NDA [non-disclosure agreement], and fully explained what that meant concerning statements made about each other and financial agreements. [Arrieta] explained he could never disclose the terms of their NDA, but that they were barred from speaking [ill] of each other or discussing, in any way, financials or property or how they were divided." *Id.* This affidavit, Keller argues, shows Arrieta discussed the MSA with others beyond his breaches in the malpractice suit and so she is entitled to discovery of his social media posts and email accounts to determine if he made any other disclosures.

At the outset, the Court notes that Keller does not allege Arrieta disclosed sensitive portions of the MSA to Mr. White. Instead, Keller alleges that Arrieta communicated that he *could not* disclose portions of the MSA because the MSA contains an NDA. True, in explaining why he could not discuss the MSA, Arrieta disclosed a portion of the MSA: that it contains an NDA. Whether such a disclosure would constitute a material breach of the MSA's NDA is questionable. The Court need not resolve this issue, however, because even if disclosing the

5

NDA to Mr. White was itself a breach of that agreement, Keller still provides no information to show that discovery of Arrieta's social media accounts and email accounts will lead to relevant information. That is, Mr. White's affidavit in no way mentions communication with Arrieta about the MSA by social media or email. Therefore, the Court rejects Keller's argument that the alleged conversation between White and Arrieta serves as a key to unlock the door to the discovery Keller seeks.

Lastly, Keller argues that the requested information is proper because Arrieta asked Keller to provide almost identical information in his discovery requests to her. Doc. 112 at 5. That Arrieta asked the same discovery questions does not alter the Court's decision that Keller has failed to show the relevance of her questions. To the extent Keller objects to Arrieta's discovery questions, the Court makes no ruling on those objections because they are not the subject of this motion to compel and are not presently before the Court.

For these reasons, the Court denies the motion to compel as to Interrogatory No. 1, Request for Production No. 1, and Interrogatory No. 2.

### 2. Request for Production No. 2

Request for Production No. 2 seeks "all emails, texts, written communications or other documents made, acknowledged or approved by you that are in your possession, custody or control regarding Keller, any terms set forth in the MSA, any information exchanged or received by you regarding the Divorce Case and any disagreements between you and Keller during your marriage from December 28, 2016 through the present." Doc. 112-2 at 11. In response, Arrieta provided a privilege log for communications with his counsel in this matter and produced communications with his counsel in the malpractice lawsuit. *Id.* He otherwise objected to the request as unduly burdensome, overly broad, and irrelevant. Keller asserts that Arrieta's response

6

was an improper limitation of the scope of her discovery request and she seeks a complete response to Request for Production No. 2.

The Court finds that this discovery request is sufficiently tailored to seek information relevant to Keller's claims and defenses. That is, the request seeks communications about Keller, the MSA, and the divorce case after the divorce was finalized. Further, while Arrieta initially objected to the request as unduly burdensome and overbroad, he provided no further argument regarding that objection in his briefing on the motion to compel. And the Court has no reason to believe searching for such communications would be unduly burdensome when Arrieta can limit his search by the specific terms listed in the request. Accordingly, the Court grants the motion to compel as to Request for Production No. 2 and orders Arrieta to provide a complete response.

### 3. Interrogatory No. 5

Interrogatory No. 5 requests that Arrieta identify all income he has received from any source from May 18, 2013 (the date of Keller and Arrieta's marriage) to the present. Doc. 112-2 at 3. Arrieta partially answered the question, providing information on his sources of income from December 28, 2016 (the date of Keller and Arrieta's divorce) to the present. *Id.* at 3-4. In Arrieta's counterclaim against Keller, he alleges that Keller stopped making the monthly payments that the MSA requires her to make. Doc. 23 ¶ 10. This, he complains, has caused him severe hardship and forced him to invade the corpus of his trust to meet his monthly income needs. *Id.* ¶ 11. Keller argues that information on Arrieta's income from the time of their marriage until the present is relevant to determine "how his income has changed during the marriage to post-marriage" and to evaluate "to what extent Arrieta's own conduct and financial decisions may have contributed to his alleged harm." Doc. 130.

The allegations Arrieta makes in his counterclaim place his income at issue. Arrieta's income information is relevant to his claim that Keller caused him financial hardship by discontinuing monthly payments. As Keller points out, to evaluate that claim, she needs information on his prior income (when she was making payments) to compare with his present income (when she is not making payments).

Arrieta, however, has already provided the information Keller needs. He has already provided his income information going back to the time of their MSA, December 28, 2016. Notably, this is more than three years before Keller stopped making payments to him in April 2020. Marriage income (dating back to 2013) does not appear to be relevant to the issue Keller is trying to examine: Arrieta's income before and after she stopped making monthly payments in April 2020. Keller has presented no argument as to why Arrieta's income before their MSA is relevant to Arrieta's counterclaims. Because Arrieta has already provided Keller his relevant income information, the Court denies the motion to compel as to Interrogatory No 5.

### 4. Interrogatory No. 7 and Request for Production No. 7

Interrogatory No. 7 requests that Arrieta

> Identify all trusts, retirement accounts, annuities, stocks, bonds and investment accounts for which you are or have been an owner or beneficiary since December 28, 2016, through the present. For each account, state: 1) the name and provider of the account; 2) the name(s) of the account owners, trustees, annuitants, and beneficiaries for each account; 3) the address, email address and telephone number for each individual or entity identified as an owner, trustee, annuitant and beneficiary; 4) the account number for each account; 5) the date the account was opened; 6) the value of the account on December 28, 2016; and 7) the current value of the account.

Doc. 112-2 at 5. Request for Production No. 7 seeks documentation supporting Arrieta's answer to Interrogatory No. 7, including trust instruments and account statements. *Id.* at 13.

8

Despite lodging a relevance objection, Arrieta provided responses, giving information and documentation on his trust account. *Id.* at 5, 13.

In her motion, Keller raises three deficiencies with Arrieta's answer to Interrogatory No. 7. First, she asserts that he failed to answer subpart 5. Doc. 112 at 8. After Arrieta points out in his response brief that he did provide information on subpart 5, she clarifies in her reply that Arrieta failed to answer subparts 2 and 3. Doc. 130 at 4. Because she raises an issue with subparts 2 and 3 for the first time in her reply brief, she has waived these arguments.[2] *See Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) ("[A] party waives issues and argument raised for the first time in a reply brief." (internal quotation and citation omitted)).

Second, Keller asserts that Arrieta failed to properly respond to subpart 6 of Interrogatory No. 7 and failed to provide the value of his trust account on December 28, 2016. In response, Arrieta explains that he does not know or possess documents indicating the exact account balance on December 28, 2016 but that he provided documents demonstrating the balance on January 1, 2017. Doc. 122 at 7. Keller maintains that she is entitled to documents showing the balance on December 28, 2016. December 28, 2016 is significant because that is the date Arrieta and Keller executed their MSA. The balance of Keller's trust account on December 28, 2016 as

---

[2] If Keller simply misnumbered a request that her counsel had previously discussed with opposing counsel in an attempt to resolve the dispute, the Court likely would reach a different conclusion. In such a situation, the opposing party would have been on notice as to the actual request in dispute. Here, however, Keller's good faith letter does not mention an issue with subparts 2 and 3. Further, in her motion to compel, Keller only references the subparts at issue by number (saying Arrieta failed to respond to subpart 5) without any discussion of the contents of that subpart. As such, Arrieta had no way to know subpart 2 and 3 were at issue until Keller raised issues with those subparts for the first time in her reply brief. Keller's failure to attempt to resolve these issues before her reply brief weighs in favor of concluding that she has waived the arguments she raises for the first time in reply. *See* Fed. R. Civ. P. 37(a)(1) (in an attempt to obtain information without court action, a party seeking discovery is required to confer in good faith before moving to compel discovery).

opposed to January 1, 2017 is only relevant if the balance significantly changed during the few days between those dates. Although Arrieta cannot disclose what he does not have (the balance on December 28, 2016), a statement issued not long before December 28, 2016 could be used as a comparator to the January 1, 2017 balance. Therefore, the Court will order Arrieta to disclose the balance of his trust account for the first date prior to December 28, 2016 that he knows this balance.

Keller similarly asserts that Arrieta failed to fully respond to Request for Production No. 7 because he failed to produce a statement for his trust account for December 2016. Doc. 112 at 10. In his response brief, Arrieta again repeats that he does not have documents indicating the exact amount on December 28, 2016 but that he produced a statement from January 1, 2017. Doc. 122. It is not clear from this answer if Arrieta has trust account statements from any time in December 2016, even though he does not have a statement specifically from December 28, 2016. In accordance with the above ruling, Arrieta shall produce an account statement prior to December 28, 2016 to which he has access and that is closest in time to December 28, 2016.

Lastly, Keller identified an IRA account held by Arrieta and asserts that Arrieta has failed to provide information or documentation on that account. Arrieta states in his response brief that he will supplement his answer with information about that IRA and Keller states in her reply brief that Arrieta has not done so. To the extent Arrieta has not yet supplemented his answer to Interrogatory No. 7 and Request for Production No. 7 with information and documentation on his IRA, the Court orders him to do so within thirty days after the date of this Order.

For these reasons, the motion to compel is granted in part as to Interrogatory No. 7 and Request for Production No. 7 such that Arrieta shall disclose the balance of his trust account for the first date prior to December 28, 2016 that he knows this balance and shall produce an account

10

statement prior to December 28, 2016 to which he has access and that is closest in time to December 28, 2016. He shall also produce information on his IRA account. The motion to compel is denied as to the balance of Keller's requests in Interrogatory No. 7 and Request for Production No. 7.

### 5. Interrogatory No. 8

Interrogatory No. 8 requests that Arrieta

> Identify all non-regular distributions, withdrawals or payments made from each account identified by you in response to Interrogatory No. 7, from December 28, 2016 through the present. For each non-regular distribution, withdrawal and payment identified, state: 1) the account from which it was made; 2) the date it was made; 3) the amount distributed, withdrawn or paid; and 4) the purpose of each distribution, withdrawal or payment.

Doc. 112-2 at 8. In his initial response, Arrieta lodged a relevance objection but proceeded to provide trust account statements to show disbursements. *Id.* Keller asserts that this response is incomplete because Arrieta fails to answer subpart 4, the purpose of each distribution. She further explains that through the meet-and-confer process Arrieta indicated he would provide more information as to specific disbursements about which Keller has a question. *See* Doc. 112-4 at 2 (Arrieta's response to Keller's good faith letter). Keller provided him a list of specific trust disbursements, *see* Doc. 112-6 (letter between counsel, dated April 25, 2021), but she reports that Arrieta has not yet provided any follow-up information.

In his response brief, Arrieta again lodges a relevance objection, but states that "[n]evertheless, Arrieta is in the process of preparing a supplemental response focusing on the withdrawals listed in counsel's letter of April 25, 2021." Doc. 122 at 9. In her reply brief, Keller states that she has not yet received that supplementation. Accordingly, the Court grants in part the motion to compel as to Interrogatory No. 8 and orders Arrieta to supplement his response within thirty days of the date of this Order.

11

### 6. Request for Production No. 3

Request for Production 3 seeks copies of all Arrieta's state and federal income tax returns from 2016 to the present. Doc. 112-2 at 11. In response, Arrieta produced tax returns for 2016-2019. He makes no mention of his 2020 taxes and lodges no objection to providing tax returns for 2020.[3] Accordingly, the Court grants the motion to compel as to this request and orders Arrieta to produce his 2020 tax returns.

### 7. Request for Production No. 4 and Request for Production No. 6

Request for Production No. 4 seeks Arrieta's bank statements from December 28, 2016 to the present and Request for Production No. 6 seeks all his credit card statements for the same time period. Doc. 112-2 at 12. Arrieta initially objected to both requests as unduly burdensome and irrelevant. *Id.* In response to the motion to compel, he repeats the relevance objection and states that he has already produced information related to the sources and amounts of his income. Doc. 122 at 9. Keller, on the other hand, asserts that this information is relevant to evaluate Arrieta's claim that he had to invade the corpus of his trust in order to meet his basic income needs as a result of Keller's failure to make monthly payments. Doc. 112 at 10. That is, Keller asserts that this information "will be relevant to how much income Arrieta has and the nature and extent of his expenses, information that is necessary to evaluate his claim of necessity in invading his trust." Doc. 112 at 10.

---

[3] Arrieta initially served his responses to Plaintiff's First Set of Interrogatories and Requests for Production on December 23, 2020. It makes sense that, at that time, he did not have his 2020 tax returns and therefore did not produce them. Keller filed her motion to compel on May 6, 2021, indicating that Arrieta failed to produce tax returns from 2016, 2019, and 2020. Doc. 112. In his response brief, Arrieta indicates he will supplement his response with tax returns from 2016 and 2019, but does not address his 2020 tax returns. Arrieta has a duty to timely supplement under Federal Rule of Civil Procedure 26(e).

The Court agrees with Keller that, given the allegations in Arrieta's counterclaim, the requested information is relevant. As discussed above, in his counterclaim against Keller, Arrieta specifically alleges that Keller stopped making monthly payments as required by the MSA which required Arrieta to "invade the corpus of a trust fund of which he is a beneficiary to meet his monthly income needs, thereby suffering a permanent reduction in the funds in the trust which can be invested." Doc. 23. In other words, Arrieta goes further than just alleging that Keller breached the MSA by failing to make monthly payments. He argues that this breach caused him to reduce the amount of the corpus of his trust to meet his monthly income needs. Therefore, the amount of his monthly income needs and what he spends his money on is relevant. While Arrieta has already produced information on his sources and amount of income, he has not produced information on the amount of his monthly expenses. Information on both is relevant to his claim that Keller's actions forced him to invade the corpus of his trust. Accordingly, the Court grants the motion to compel as to Requests for Production No. 4 and 6.

### 8. Request for Production No. 11[4]

Request for Production No. 11 seeks Arrieta's mental health records for the last five years. Doc. 112-2 at 14. As an initial matter, Arrieta asserts that the Court should deny the motion to compel as to Request for Production No. 11 because Keller failed to confer in good faith on this issue before filing the present motion. Indeed, Federal Rule of Civil Procedure 37(a)(1) requires that a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Here, the Court agrees with Keller that

---

[4] In her motion to compel, Keller refers to this request as Request for Production No. 7. Doc. 112 at 10. It is clear from the discovery request at issue that Keller is actually referring to Request for Production No. 11 (*see* Doc. 112-2 at 14), and so the Court will refer to No. 11.

13

she did engage in a good faith attempt to confer before including this issue in her motion to compel. After Arrieta responded to discovery on December 23, 2020, Keller sent a good faith letter on February 16, 2021. Doc. 112-3. That letter did not address Request for Production No. 11. However, while the parties were engaged in the conferral process, Keller's counsel sent an email to Arrieta's counsel seeking a clarification of Arrieta's response to Request for Production No. 11. Doc. 112-7. Keller's counsel sent that email on May 4, 2021 and, having received no response by May 6, 2021, she included Request for Production No. 11 in her motion to compel. Although Rule 37's good faith requirement is often not met when only two days passes between the time a party makes a discovery demand and the time that party files a motion to compel, the Court recognizes that the parties engaged in a good faith conferral process over many months (*see* Docs. 112-3, 112-4, 112-6, and 112-7) and it was not immediately clear to Keller during that time that Request for Production No. 11 would be an issue. Accordingly, the Court finds that Keller did satisfy the good faith conferral requirement before including this issue in her motion and so turns to Arrieta's substantive objection to the Request for Production.

Arrieta initially objected to Request for Production No. 11 as irrelevant and asserted that he "has not sought treatment for the emotional distress resulting from Plaintiff's cessation of payments as required by the MSA." Doc. 112-2 at 14. In his response to the present motion, he reiterates his relevance objection and clarifies that, while he has alleged "emotion distress related to the uncertainty of his own income as a consequence of Keller's withholding of the monthly payments owed him under the MSA," he has not sought any mental health care as a result of Keller's conduct.[5] Doc. 122 at 11. He asserts that his claim is one for "garden variety emotional

---

[5] Because Arrieta limits his objection to relevance, that Court will likewise limit its analysis to whether the requested information is relevant and will not address other potential objections, such as the psychotherapist-patient privilege.

14

distress" and as such his mental health records are irrelevant. *Id.* Keller, on the other hand, asserts that all his mental health records for the past five years are discoverable because he has placed his mental health squarely at issue in this matter. Doc. 112.

The Court agrees with Arrieta, to the extent that he will only make a claim at trial for "garden variety" emotional distress damages. Such garden variety claims do not place Arrieta's entire mental health at issue. And Arrieta has already confirmed that he has not sought mental health treatment for the emotional distress caused by Keller. Accordingly, to the extent Arrieta intends to only seek damages for garden variety emotional distress, the Court denies the motion to compel as to Request for Production No. 11.

The Court advises Arrieta, however, that in declining to produce the discovery requested he likely will greatly reduce the extent of evidence and argument he will be able to present at trial related to emotional distress damages. He likely will be able to argue that he has suffered the type of emotional distress typically experienced by someone who must dip into the corpus of his trust because an ex-spouse stopped making payments called for in an MSA. But he likely will not be able to go much farther. For instance, the Court likely would prohibit an argument that stress associated with the cessation of the MSA payments has caused him to lose sleep. This is because, if Arrieta is going to make this argument, Keller should have the opportunity to discover other sources of stress that could provide alternative explanations for the manifestation of his emotional distress. In other words, by choosing not to provide discovery as to alternative explanations, Keller is choosing to limit the extent to which he can present evidence and argument related to his emotional damages.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion to Compel Defendant Arrieta to Provide Discovery (Doc. 112) is GRANTED IN PART AND DENIED IN PART. Within 30 days of the entry of this Order, Defendant Arrieta shall provide the following discovery:

- a complete response to Request for Production No. 2;
- in response to Interrogatory No 7, Arrieta must disclose the balance of his trust account for the first date prior to December 28, 2016 that he knows this balance;
- in response to Request for Production No. 7, Arrieta shall produce a trust account statement prior to December 28, 2016 to which he has access and that is closest in time to December 28, 2016;
- information responsive to Interrogatory No. 7 and Request for Production No. 7 regarding his IRA account;
- supplemental information responsive to Interrogatory No. 8;
- 2020 tax returns in response to Request for Production No. 3;
- a complete response to Request for Production No. 4; and
- a complete response to Request for Production No. 6.

Because the Court has granted Plaintiff's motion in part and denied it in part, each side shall bear their own expenses related to this motion.

Lastly, the Court takes under advisement Plaintiff's Motion to Extend Deadline for Rule 26(a)(2) Expert Disclosure and Request for Status Conference (Doc. 134). Because the present Order may impact the parties' positions on discovery deadlines, the parties shall confer regarding Plaintiff's request for an expert deadline extension. To the extent the parties are able to reach an agreement on deadline extensions, they should submit a proposed order to the Court within 35

16

days. If, after conferring, disagreements regarding deadlines remain, no later than 35 days from this Order, the parties should notify the Court through an email to yarbroughproposedtext@nmd.uscourts.gov that they have been unable to reach a complete agreement and the Court will then set up a status conference.

 

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**