## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**RACHEL KAY KELLER,**

      **Plaintiff,**

**vs.**                                                                 **Civ. No. 20-259 KG/SCY**

**ANDREW F. ARRIETA,**

      **Defendant/Third-Party Plaintiff,**

**vs.**

**COOPER & SCULLY, PC; ERIC
HINES; WESLEY G. JOHNSON;
TOM CARSE; and SEAN P. McAFEE,**

      **Third-Party Defendants.**

## ORDER GRANTING IN PART MOTION TO QUASH

This matter comes before the Court on Plaintiff Rachel Kay Keller's Motion to Quash Defendant Arrieta's Subpoena (or in the Alternative Request for Protective Order) and for Sanctions, filed May 11, 2021, Doc. 115, and fully briefed June 8, 2021, Docs. 121, 128. Having considered the motions and the relevant law, the Court grants in part and denies in part the motion to quash and narrows the items required to be produced under the subpoena. The Court also grants in part and denies in part Keller's request for sanctions, requiring Arrieta to pay $300 to Keller for the time her attorneys spent addressing the issue of prior notice.

### BACKGROUND

### 1. Case Background

Plaintiff Keller and Defendant Arrieta married on May 18, 2013 and divorced in 2016. This lawsuit is the third in a series between Keller and Arrieta. The first lawsuit was their divorce

proceeding that was resolved through a Marital Settlement Agreement ("MSA") executed on December 28, 2016, which was later incorporated into their Final Divorce Decree. The MSA includes a non-disclosure and non-disparagement agreement ("NDA") which states, in part, that "the parties agree not to discuss the details of this case, nor the terms of the settlement of this action, with anyone who is not counsel of record or a trust advisor in this matter." Doc. 90 ¶ 17 (Second Amended Complaint). In the divorce case, Keller was represented by David Walther and Amber Macias-Mayo and Arrieta was represented by Sarah Bennett (who was law partners with Morgan Honeycutt). After the divorce case, those four attorneys merged their practices and are now partners in Walther, Bennett, Mayo, Honeycutt, PC ("WBMH"). This merger led to the second case: on September 27, 2017 Arrieta filed a malpractice lawsuit against his former attorney in the divorce case. That case ended on July 5, 2019, when the Court granted summary judgment in favor of Arrieta's former divorce attorney. *See* 17cv986 PJK/KBM, Doc. 62.

In the present (and third) lawsuit, Keller alleges that Arrieta, by and through his counsel, disclosed the parties' settlement discussions and final terms of the MSA during his malpractice case, in violation of the MSA's non-disclosure agreement. Keller brings claims against Arrieta for breach of contract, breach of good faith and fair dealing, invasion of privacy, and breach of confidence. Doc. 90. In response, Arrieta filed a counterclaim against Keller in which he complains that, in April 2020, Keller stopped making monthly payments to him to which he alleges he is entitled under the MSA. Doc. 23. Arrieta also filed a third-party complaint against his former counsel in the malpractice case, asserting that he (Arrieta) relied on his counsel to understand the applications of the non-disclosure clause and to take all necessary steps to prevent it from being violated. *Id.* at 11, ¶ 11. Keller is represented in the present matter by Amber Train and Denise Thomas while Arrieta is represented by Randy Bartell and Matthew Zidovsky.

### 2.  Subpoena Background

The Court entered a scheduling order on October 6, 2020 and the parties are currently conducting discovery. Docs. 55, 132. On March 5, 2021 counsel for Arrieta (Zidovsky on behalf of Bartell) served a subpoena (dated March 4, 2021) on WBMH for production of the following items related to representation of Keller in the divorce case:

> (1) All correspondence, email, voicemail, or other communications by or between David Walther, Amber Macias-Mayo, Sarah Bennett, Morgan Honeycutt and Rachel Rogers Keller f/k/a Rachel Arrieta in connection with the case *Arrieta v. Arrieta*, D-101-DM-2015-00544;
>
> (2) All drafts preceding the final copy of the Stipulated Memorandum of Understanding in the case *Arrieta v. Arrieta*, D-101-DM-2015-00544;
>
> (3) All drafts preceding the final copy of the Marital Settlement Agreement in the case *Arrieta v. Arrieta*, D-101-DM-2015-00544; and
>
> (4) All correspondence, email, voicemail or other communications by or between David Walther, Amber Macias-Mayo and any representative of Tolleson Wealth Management in connection with the case *Arrieta v. Arrieta*, D-101-DM-2015-00544.

Doc. 115-1. Arrieta's counsel later (on April 14, 2021) clarified and narrowed the scope of the subpoena to seek the following:

> the electronic documents/communications in the divorce case including (1) all emails between Walther/Macias-Mayo and Rachel Keller related to the divorce case, (2) all emails between Walther/Macias-Mayo and Bennett/Honeycutt related to the divorce case, and (3) all drafts of the MSA, including any drafts attached to any email correspondence between the attorneys.

Doc. 121-5.

On March 9, Bartell's legal assistant sent a copy of the subpoena addressed to counsel for record in the case, but failed to include Keller's counsel (Train and Thomas) on the email. Doc. 121-4. Counsel for Keller did not find out about the subpoena until April 26, 2021 when Macias-Mayo (of WBMH) contacted Thomas to obtain a release from Keller. *See* Doc. 115-2 ¶ 12 (Aff. of Macias-Mayo). Counsel for Keller then reached out to counsel for Arrieta, explaining that they had not received notice of the subpoena and that they objected to the subpoena. Doc. 115-3.

After the parties were unable to reach an agreement regarding the subpoena (*see* Docs. 115-4, 115-6, 115-7), Keller filed the present motion to quash on May 11, 2021. Doc. 115. Keller also filed a motion to stay enforcement of the subpoena, pending resolution of the motion to quash, which the Court granted. Docs. 116, 117. The motion to quash is now fully briefed and ready for decision. Docs. 121, 128, 129.

**DISCUSSION**

In her motion, Keller moves to quash the subpoena because defense counsel failed to provide prior notice to her and because it seeks privileged and confidential information. In the alternative, she moves for a protective order. Lastly, Keller moves for sanctions. The Court will address each argument in turn.

**1. Lack of Prior Notice**

Federal Rule of Civil Procedure 45(a)(4) requires that if a "subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." It is undisputed that Arrieta's counsel violated this rule and failed to serve Keller with notice and a copy of the subpoena before serving the subpoena on WBMH. Arrieta's counsel explains that the failure to provide prior notice was a "clerical error" made by Bartell's legal assistant. Doc. 121 at 1. That is, when Bartell's assistant emailed the subpoena to the other attorneys in this case, she inadvertently failed to include Keller's counsel on the email. *See* Doc. 121-4 (email to counsel). She also failed to include Bartell and Zidovsky on the email, so they were unaware of the failure to notify Keller's counsel until Keller's counsel brought it to their attention.

In addition, Bartell's assistant did not send out her email notifying *any* counsel of the subpoena until March 9, 2021. Doc. 121-4. This is 5 days after the March 4, 2021 date on the subpoena (Doc. 115-1) and 4 days after service of the subpoena. *See* Doc. 115-2 ¶ 8 (Ms. Macias-Mayo of WBMH affidavit stating that WBMH was served and accepted notice of the subpoena on March 5, 2021). Thus, in issuing his subpoena, Arrieta violated rule 45 in two ways: (1) he never provided notice to Keller, and (2) the notice he provided to others was late. Fed. R. Civ. P. 45(a)(4) (requiring of the party issuing a subpoena that, "*before it is served* on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party") (emphasis added).

These facts demonstrate that Arrieta clearly violated Rule 45(a)(4)'s prior notice requirement. Although Arrieta explains that this violation is a result of an error on the part of his attorney's assistant, "[a] supervising attorney assumes the liability and responsibilities for his or her subordinate attorney's and paralegal's violations and an attorney cannot escape liability for this abuse of process by pointing to the inexperience of a subordinate." *Kremsky v. Kremsky*, No. 16-4474, 2017 WL 30003, at *2 (E.D. Penn. Jan. 3, 2017) (internal quotations and citations omitted). Thus, although the Court accepts Keller's explanation, such explanation does not serve to excuse the Rule 45(a)(4) violation.

Nonetheless, quashing the subpoena and suppressing the discovery of potentially relevant information would be inconsistent with the Court's truth-seeking function and would provide no remedy to an actual harm. The purpose of Rule 45(a)(4) is to provide opposing counsel an opportunity to object to a subpoena before documents are produced. *See Gilpatrick v. Harper Co., Kansas*, No. 18-1245, 2018 WL 6504394, at *3 (D. Kan. Dec. 11, 2018) ("The requirement that notice be provided to the parties before service of the subpoena allows opposing counsel

time to object to the subpoena." (quoting *Butler v. Biocore Medical Tech., Inc.*, 348 F.3d 1163, 1173 (10th Cir. 2003))). The Rule 45(a)(4) violation in this instance has not thwarted this opportunity. Fortunately, before producing the documents requested, the subpoenaed entity reached out to Keller's counsel for a release, thereby notifying Keller's counsel of the subpoena before it was executed. Further, once Arrieta's counsel became aware of the service error, they informed Keller's counsel that Arrieta would not move to enforce the subpoena or take any other action related to the subpoena until the time period provided for objections and motions in Rule 45 had elapsed. Thus, the Rule 45 violation did not deprive Keller of the opportunity to file motions related to the subpoena before its execution. Because no documents have been produced in response to the subpoena and because the Court stayed enforcement of the subpoena until the present motion to quash is resolved, Keller has suffered no prejudice as a result of the prior notice failure. Therefore, the Court will proceed to address the merits of Keller's objections to the subpoena.

### 2. Privileged and Confidential Information

Federal Rule of Civil 45(d)(3)(iii) requires the court to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Keller moves to quash the present subpoena, asserting that it seeks information subject to the attorney-client privilege and subject to the work product doctrine. Arrieta argues that Keller has waived both privileges. The Court concludes that some, but not all, of the information Arrieta seeks is discoverable.

#### a. Attorney-Client Privilege

In this diversity case, New Mexico state law governs the attorney-client privilege. *See* Fed. R. Evid. 501. New Mexico Rule 11-503 provides that "[a] client has a privilege to refuse to

disclose, and prevent any other person from disclosing, a confidential communication made for

the purpose of facilitating or providing professional legal services to that client between the

client and the client's lawyer or representative . . . or between lawyers representing the client."

Rule 11-503 NMRA.

A person can waive this privilege by voluntary disclosure: "[a] person who possesses a

privilege against disclosure of a confidential matter or communication waives the privilege if the

person voluntarily discloses or consents to disclosure of any significant part of the matter or

communication." Rule 11-511 NMRA. A person can also implicitly waive the privilege by

placing privileged matters at issue. When determining whether a privileged matter is at issue, the

New Mexico Court of Appeals has adopted a restrictive approach. *See Public Service Co. of New*

*Mexico v. Lyons*, 2000-NMCA-077, ¶¶ 15-22, 10 P.3d 166. That is, privilege is waived only

"where a party seeks to limit its liability by describing [the attorney's] advice and by asserting

that he relied on that advice," or "where direct use is anticipated because the holder of the

privilege must use the materials at some point in order to prevail." *Id.* ¶ 22. It is not enough that a

party put her state of mind at issue in order to waive attorney-client privilege. *See Gingrich v.*

*Sandia Corp.*, 2007-NMCA-101, ¶ 19, 165 P.3d 1135. Instead, a party only waives her attorney-

client privilege where she "directly relies on attorney client communications in order to advance

a claim or defense." *Id.* ¶ 15.

Keller's claim can be summarized as follows: (1) Keller and Arrieta entered into a

contract (the MSA); (2) that contract contained an NDA; (3) the NDA was a material term of the

contract; (4) Arrieta violated the NDA; (5) in so doing, Arrieta breached the contract; (6) as a

result, Keller is entitled to rescind the contract, including any obligation under the contract to

make monthly payments to Arrieta. Doc. 90 (Second Amended Complaint) ¶¶ 23-31, 36, 64.

The current discovery dispute relates to the third enumerated item: whether the NDA was a material term of the MSA. To prove it was, Keller stated in her Initial Disclosures that her divorce attorneys (Amber Macias-Mayo and David Walther) would likely have "discoverable information about the divorce case, negotiations, and terms of the MSA" and listed them as witnesses. Doc. 121-1 at 3. Further, in her answer to Arrieta's Interrogatory number 5, Keller states:

> I made it clear to my attorney, Amber Macias-Mayo, that I would rather go to trial than enter into an agreement that did not include the Non-Disclosure Provision, it was that important to me. This information was conveyed to Andrew through my attorney, Amber Macias-Mayo. Initially, Andrew did not want to include the Non-Disclosure Provision in the MSA, but eventually agreed to in order to settle the case. Ms. Mayo and I will both testify to these facts.

Doc. 121-2 at 7. Given Keller's intent to testify, and to have her divorce attorneys testify, about NDA communications they had, Keller makes no argument that she has not put at issue communications with her attorneys about the NDA. Nor does Keller argue that the discovery Arrieta seeks—records related to these communications—are irrelevant. Instead, she argues that the communications she intends to present as evidence at trial are not privileged. Doc. 128 at 5 ("To the extent that Keller testifies about conversations she had with her divorce attorneys in which she asserted that she wanted an NDA included in the MSA, such communications to her attorneys were not privileged as there was no expectation that her demand regarding an NDA would be kept in confidence (confidentiality being a key requirement of privileged communications)."). From here, she argues, "[a]s Keller will not be relying on privileged information to assert the materiality of the NDA, she has not waived any privilege on that topic." Doc. 128 at 5.

In other words, Keller argues that she can place communications with her attorney about the NDA at issue, select which communications to use offensively, and then by virtue of

selecting the communications she likes (thereby making them unprivileged), she can shield from disclosure other communications on the same topic she does not like and does not want opposing counsel to know about. This position is inconsistent with New Mexico privilege waiver law. *See* Rule 11-511 NMRA ("A person who possesses a privilege against disclosure of a confidential matter or a communication waives the privilege if the person voluntarily discloses or consents to disclosure of any significant part of the matter or communication."). In considering whether, under New Mexico law, a party has waived attorney-client privilege protection in communications "courts must adhere closely to waiver as defined in Rule 11–511 and are not free to engage in ad hoc rule-making and waiver analysis as requested by Defendants." *Lyons*, 2000-NMCA-077, ¶ 14, 10 P.3d at 171. By testifying, and having her divorce attorneys testify, about communications they had regarding the NDA, Keller "voluntarily discloses or consents to disclosure of [a] significant part of the matter or communication" about the NDA. As a result, under Rule 11-511, she "waives the privilege" in communications with her attorneys related to the NDA.

The New Mexico Court of Appeals decision in *Gingrich* also undermines Keller's argument. There, a corporation hired a private attorney to conduct an investigation and prepare a report, in part, about an employee. *Gingrich,* 2007-NMCA-101, ¶¶ 2-6. The corporation, in the process of terminating that employee, disclosed the report. *Id*. at ¶¶ 5-6. The employee then sued the corporation for wrongful termination and the district court ordered, among other things, the corporation to disclose communications between the investigating attorney, corporate in-house counsel, and corporate representatives. *Id*. at ¶ 6. The court of appeals affirmed this order. *Id*. at 7.

Notably, the disclosure of some portions of communications in *Gingrich* (the report) did not serve to protect other portions of related communications from disclosure. Instead, the opposite is true: disclosure of the report in *Gingrich*, like disclosure of NDA communications in the present case, put related communications at issue and required the disclosure of otherwise protected communications. Whether the corporation may have intended from the beginning to disclose the report it commissioned has nothing to do with the *Gingrich* court's analysis. Similarly, whether Keller from the beginning wanted her attorneys to disclose what she told them about the NDA is irrelevant. Keller, like the corporation in *Gingrich*, made a voluntary choice to disclose related communications. What mattered in *Gingrich* is that "[i]n addition to disclosing the Report [corporation] made direct use of the Report in this litigation in defending against Plaintiff's claim that [corporation] violated the terms of an implied employment contract by demoting her without cause." *Id*. ¶ 14. Similarly, because Keller intends to make direct use of NDA communications she had with her attorneys to prove materiality, she has waived any privilege in communications related to those about which she and her attorneys intend to testify. Keller cites no law, and the Court is aware of none, that supports the notion that a person can place communications at issue, choose what portions of those communications to disclose, and then make an end-run around the waiver rule by claiming her selective disclosure of portions of communications makes them unprivileged and prevents the mandatory disclosure of related communications.

Further, Keller's argument that what she told her attorneys to tell someone else is not privileged because that statement was never meant to be kept in confidence also fails. *See* Doc. 128 at 5 (Keller "is able to testify regarding her state of mind regarding the importance of the NDA without relying on privileged communications" because "the very point of [her

communications with her attorneys about the NDA] was so that Keller's attorneys would in turn share with opposing counsel the necessity of an NDA."). It is true that not all communications between a client and her attorney are privileged. To be privileged, those communications must be confidential and "constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010). But a client's statement to her attorney is not necessarily unprivileged just because, at the time the client made the statement, the client manifested a subjective intent to have her attorney convey the statement to opposing counsel. Consider the following conversation:

> Client: "I think X about the case, I did Y while we were married, and I want Z as a resolution. Please tell all of that to opposing counsel."

> Attorney: "That would be a bad idea for the following reasons . . ."

> Client: "You are right. Never mind."

Accepting Keller's argument, this conversation was unprivileged from its inception and so opposing counsel could issue a successful interrogatory or request for production to obtain these attorney-client communications, even if opposing counsel never placed them at issue. Keller's argument is wrong because a client's subjective intent at the time she makes a statement to her attorney is not the litmus test for determining whether those communications continue to be protected by the attorney-client privilege. Although statements lose their privileged protection once they are shared outside the attorney-client relationship, the mere expression of a client's desire to have her attorney share the communication does not necessarily cause that communication to immediately become unprivileged.

That the expected testimony of Keller and her divorce attorneys is their summary of their previous communications rather than a record of those previous communications also weighs in

favor of requiring disclosure of records that relate to the actual communications. It would be fundamentally unfair to allow Keller and her divorce attorneys to characterize their conversations about the NDA in a self-serving manner while prohibiting Arrieta from obtaining the actual communications that are the best evidence of those statements, and that could possibly impeach the characterizations of Keller and her divorce attorneys. "[P]rivileges must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (internal quotations and citations omitted). Allowing Keller to offensively use testimony about NDA communications she had with her attorneys while preventing disclosure of records that could undermine those accounts provides no public good that transcends the normally predominant principle of utilizing all rational means for ascertaining truth.[1]

The balance of the equities tip against Keller. Keller claims that the NDA has always been important to her and that she told her attorneys to convey the importance of this provision to opposing counsel. Keller intends to testify on this topic at a public trial. Thus, she cannot credibly claim a strong privacy interest in communications with her attorneys about the NDA. Keller undoubtedly prefers not to disclose records that might be used to impeach a self-serving summary of her past communications. But preventing Keller from being impeached with records

---

[1] In *Lyons*, the court wrote, "[w]e believe the *Hearn* approach places this venerable privilege in harm's way, something we cannot countenance, and even at the expense of a zealous pursuit of truth." *Lyons*, 2000-NMCA-077, ¶ 23. The *Hearn* approach, however, did not involve a party making offensive use of a communication and then attempting the shield from discovery related communications. In this latter situation, a waiver occurs even under New Mexico's restrictive approach.

created at or near the time of the communications at issue is not a legitimate reason to prevent disclosure of the contemporaneous records Arrieta seeks.[2]

By directly relying on attorney-client communications to advance her claim, Keller put her discussions with her divorce attorneys about the NDA at issue. As her initial disclosures and discovery answers demonstrate, Keller seeks to use offensively past communications with her divorce attorneys to establish that the NDA was a material term of the MSA. Likewise, Keller has placed drafts of the MSA, including discussions her attorneys had between themselves about the drafts, directly at issue. This is because information about when the NDA was included in the MSA, and how focused Arrieta and her attorneys were on the NDA, all bears on whether the NDA was a material term.

Nonetheless, although Keller has put these communications with her divorce attorneys at issue, she has not put at issue *all* of her past communications with her divorce attorneys. Nowhere does Keller indicate that she will use other discussions with her divorce attorneys about her divorce case to advance a claim or defense in the present case. For that reason, the Court will limit the subpoenaed information to the following:

(1) All emails between Walther/Macias-Mayo and Keller related to the non-disclosure agreement in the divorce case; and

(2) all emails between Walter/Macias-Mayo and Bennett/Honeycutt related to the non-disclosure agreement in the divorce case.

---

[2] Because the Court finds that Keller waived her attorney-client privilege for communications regarding the non-disclosure agreement, it need not address the parties' arguments about whether she voluntarily waived her privilege by disclosing communications with Macias-Mayo in her discovery responses and by discussing the non-disclosure agreement with her trust advisor.

(3) all drafts of the MSA, including any drafts attached to email correspondence between

Walther and Macias-Mayo and all drafts shared with Bennett/Honeycutt.

b. Work Product

Unlike attorney-client privilege, federal law governs the work-product doctrine. *See Frontier Refining, Inc. v. Corman-Rupp Co., Inc.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998). Federal Rule of Civil Procedure 26(b)(3) provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representatives (including the other party's attorneys, consultant, surety, indemnitor, insurer, or agent)."

Here, Arrieta alleges that Keller waived work-product protection for any draft of the MSA disclosed to Arrieta's divorce attorneys or disclosed to her third-party trust advisor. In considering which documents enjoy work-product protection, the Court first asks whether Keller intentionally distributed these documents to individuals not part of her legal team. If she did, those documents are likely not protected work product. *See, e.g.*, *United State ex rel. (Redacted) v. (Redacted)*, 209 F.R.D. 475, 479 (C.D. Utah 2001) ("As a general rule, disclosure of work product confidences to third parties waives the protection."); *Shelby v. Nyhus*, No. CIV 16-432, 2018 WL 8345052, at *6 (W.D. Okla Aug. 8, 2018) ("The protection afforded by the work-product doctrine is waived when a party claiming the protection has voluntarily disclosed work product to a party not covered by the work-product doctrine."). Thus, the work-product doctrine does not protect drafts of the MSA that her divorce counsel sent to Arrieta's divorce counsel.[3]

---

[3] And, even if the work-product doctrine did protect such drafts, Arrieta could simply request the drafts from his divorce counsel (who are now in the same firm as Keller's divorce counsel). In other words, Arrieta could receive this same information from the same place (WBMH firm) by simply directing the same subpoena to his prior counsel.

With regard to drafts of the MSA shared only among Keller's legal team, the same principles discussed above that militate in favor of a waiver of the attorney-client privilege in these documents also militate in favor of a waiver of the work product privilege. Moreover, because the divorce litigation concluded long ago, no fear exists that disclosure of work product from that litigation will allow a party to appropriate the fruits of their opponent's labor or to obtain prematurely their opponent's strategy or mental preparations. For these reasons, the Court finds that work-product protection does not shield production of the subpoenaed information.

      c.  <u>Overly Broad and Unduly Burdensome</u>

Lastly, Keller asserts that the Court should quash the subpoena because it makes sweeping requests that are overly broad and unduly burdensome. The obligation to prove overbreadth and undue burden, however, falls on the party subpoenaed, not Keller. If the third-party subpoenaed considers Arrieta's requests to be unduly burdensome, that third-party can move to quash the subpoena. But, for now, the Court rejects this argument because it is not Keller's to make. Moreover, even if it were Keller's argument to make, Keller fails to state what the burden would be on the WBMH firm to respond to the subpoena. Thus, on the current record, the Court would be unable to find that the requested information is unduly burdensome.

Keller's argument that the information requested in the original subpoena (*see* Doc. 115-1) is overly broad on its face because it seeks *all* communications in the divorce case also fails. Although Arrieta's original request may have contained this broad language, his modified request was much narrower. *See* Doc. 121-5. Keller has not argued that Arrieta's modified request is overly broad. Further, the Court finds that the modified request, as further limited in this Order, is not overly broad. For these reasons, the Court will not quash the subpoena as overly broad or unduly burdensome.

### 3. Protective Order

As an alternative to quashing the subpoena, Keller moves for a protective order under Federal Rule of Civil Procedure 26(c)(1). Specifically, Keller seeks an order (1) forbidding production of documents that are subject to the attorney-client privilege and work-product doctrine and allowing Keller a reasonable amount of time to review documents and prepare a privilege log as necessary; (2) limiting the scope of disclosure to information that Arrieta can show is reasonably likely to lead to the discovery of admissible evidence and is not otherwise available to him through requests made to his former counsel; and (3) requiring Arrieta to pay the expenses incurred in complying with the subpoenas. Doc. 115 at 11-12. For his part, Arrieta objects to a protective order, but does not oppose Keller's request for a reasonable amount of time to create a privilege log for privileged information. Doc. 121 at 14.

Rule 26(c)(1) allows that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . ." "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery; specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery; prescribing a discovery method other than the one selected by the party seeking discovery; [or] forbidding inquiry into certain matters or limiting the scope of disclosure or discovery to certain matters . . . ." Fed. R. Civ. P. 26(c)(1).

The Court denies Keller's request for a protective order. First, Rule 26(c)(1) allows "any person from whom discovery is sought" to move for a protective order. Keller is not the person from whom discovery is sought and the WBMH firm has made no similar motion for protective order. Additionally, because the Court has modified the subpoena as discussed above, it does not

find good cause to enter a protective order as requested by Keller. Similarly, because it is not Keller who will incur the cost of complying with the subpoena, it is not Keller's place to argue that Arrieta should pay the cost of complying with the subpoena. Lastly, because the Court has modified the subpoenaed information to communications and documents for which Keller has waived her attorney-client privilege and work-product protection, the Court finds it unnecessary for Keller to create a privilege log.

### 4. Sanctions

Keller requests that the Court impose sanctions on Arrieta and lists a number of different avenues the Court has for imposing such sanctions. First, Keller asserts that the Court should impose sanctions under Federal Rule of Civil Procedure 45(d)(1) because Arrieta's subpoena is overly broad and unduly burdensome on its face. Doc. 115 at 12. Rule 45(d)(1) provides that

> [a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply.

Because Arrieta's counsel conferred with the WBMH firm and narrowed the subpoena request, the Court finds that sanctions are not warranted under Rule 45(d)(1).

Next, Keller asserts that the Court should impose sanctions under Federal Rule of Civil Procedure 26(g). Rule 26(g) mandates that every discovery request "must be signed by at least one attorney of record," and "[b]y signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry, with respect to a discovery request, response or objection, it is consistent with these rules . . . ." Rule 26(g)(1)(B)(i). "If a certification violates this rule without substantial justification, the court, on

motion or on its own, *must* impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Rule 26(g)(3) (emphasis added).

Keller explains that the subpoena, signed by attorney Matthew Zidovsky for Randy Bartell, contains a false certification that it was issued "consistent with the rules," because counsel failed to follow Rule 45(a)(4) for prior notice. As discussed above, Arrieta's counsel did indeed violate Rule 45(a)(4) by not providing prior notice to Keller's counsel or to any of the other parties in the lawsuit before serving it on WBMH. Further, Arrieta's justification – a miscommunication and mistake by staff – simply explains how the rule came to be violated; it does not demonstrate the rule was not violated (again, counsel are responsible for their staff and for ensuring compliance with the rules). Although the Court does not believe Arrieta's counsel acted intentionally or in bad faith to violate the rule, the Court cannot find their explanation to be a substantial justification. Accordingly, under the mandatory language of Rule 26(g)(3), the Court must fashion an appropriate sanction.

The Court will require Arrieta to pay $300 to Keller, whose attorneys spent time addressing the issue of prior notice, including drafting emails, discussing it with Arrieta's counsel, and drafting the notice portion of her motion to quash. The Court finds this to be an appropriate sanction because the prior notice failure did not cause much extra expense. That is, Keller objected to the subpoena on grounds other than just the prior notice violation, and so she would have filed her motion to quash regardless of whether she received prior notice or delayed notice. However, it is clear her counsel spent some time addressing the issue of prior notice (*see* Docs. 115-3, 115-5 (correspondence with opposing counsel regarding notice of the subpoena)) and so the mandatory sanction the Court must impose should inure to the benefit of Keller.

Lastly, Keller requests that the Court impose sanctions under its inherent powers for Mr. Zidovsky's alleged bad faith misrepresentation. "Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (internal quotation and citation omitted). "That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* (internal quotation and citation omitted).

By way of background, Ms. Macias-Mayo (Keller's prior divorce counsel to whom the subpoena was directed, in part), explains that, after she received the subpoena at issue, she contacted Arrieta's counsel (Randy Bartell) and received a return call from his other attorney, Matthew Zidovsky. Doc. 115-2 ¶¶ 9-10 (Macias-Mayo Aff.). She informed Mr. Zidovsky that the files at issue contained privileged information which she would only produce if Keller signed a release. *Id.* ¶ 10. In response, Mr. Zidovsky told Ms. Macias-Mayo that Keller waived her privilege. *Id.* ¶ 11. Ms. Macias-Mayo did not accept that representation; she informed Mr. Zidovsky that she would need a release or a written waiver signed by Keller. *Id.* ¶ 11.

Mr. Zidovsky remembers the call slightly differently. He denies that he represented to Ms. Macias-Mayo that the attorney-client privilege had been waived as a matter of law, that he was aware of an express waiver of attorney-client privilege by Keller, or that he was in possession of a written or formal waiver of attorney-client privilege by Keller. Doc. 121-3 ¶¶ 9-11 (Zidovsky Aff.). Based on his recollection of the call with Ms. Macias-Mayo, he avers that he represented to Ms. Macias-Mayo that "based on my understanding of the facts of this case, it was my opinion or belief that any attorney-client privilege was likely waived for the materials at issue given the facts of the case." *Id.* ¶ 8.

There is no evidence that Mr. Zidovsky made any representations in bad faith or as a ruse to obtain documents from Ms. Macias-Mayo to which he was not entitled. In addition, there is no evidence that Mr. Zidovsky's representations had any effect on what Ms. Macias-Mayo, or any other party or counsel in this case, did or did not do. In addition, Mr. Zidovsky was speaking to a licensed attorney who knew he was acting in his capacity as a party representative, rather than to a lay person who might be susceptible to taking his assertations as legal advice or as a fact. Thus, the Court will not impose sanctions on Mr. Zidovsky in addition to the appropriate sanctions it is required to impose under Rule 26(g). The Court, however, cautions Mr. Zidovsky moving forward to verify that certifications that he makes are accurate and that his "good faith belief that a waiver of attorney-client privilege has occurred" is not the same as an undisputed fact regarding waiver. When stating his belief that a privilege waiver occurred, Mr. Zidovsky should have made clear that this was his opinion, and that Keller may not have the same view.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion to Quash Defendant Arrieta's Subpoena (or in the Alternative Request for Protective Order) and for Sanctions (Doc. 115) is GRANTED IN PART AND DENIED IN PART. The Court modifies the subpoena to the following information:

(1) All emails between Walther/ Macias-Mayo and Keller related to the non-disclosure agreement in the divorce case;

(2) all emails between Walter/ Macias-Mayo and Bennett/ Honeycutt related to the non-disclosure agreement in the divorce case; and

(3) all drafts of the MSA, including any drafts attached to email correspondence between Walther and Macias-Mayo and all drafts shared with Bennett/Honeycutt.

Lastly, the Court grants in part and denies in part Keller's request for sanctions. Arrieta shall pay $300 to Keller within 14 days of the entry of this Order.

**STEVEN C. YARBROUGH**
**United States Magistrate Judge**