IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RACHEL KAY KELLER,

    Plaintiff,

v.                                                            No. 20-cv-0259-KG/SCY

ANDREW F. ARRIETA,

        Defendant/ Third-Party Plaintiff,

v.

COOPER & SCULLY, PC; ERIC HINES;
WESLEY G. JOHNSON; TOM CARSE; and
SEAN P. McAFEE,

        Third-Party Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

        This matter is before the Court on Third Party Defendant Sean P. McAfee's Motion for

Partial Summary Judgment on Plaintiff's Claim for Rescission and Restitution (Motion), filed

March 16, 2021. (Doc. 100). Defendant and Third-Party Plaintiff Andrew F. Arrieta adopted

and joined the Motion. (Doc. 103). Third-Party Defendants Cooper & Scully, PC, Eric Hines,

and Wesley G. Johnson together also joined, as did Third-Party Defendant Tom Carse. (Docs.

104 and 108). Plaintiff Rachel Kay Keller responded in opposition, and Mr. McAfee replied.

(Docs. 111 and 124). Third-Party Defendants Cooper & Scully, PC, Eric Hines, and Wesley G.

Johnson together joined Mr. McAfee's reply and in addition made their own arguments. (Doc.

125).

1

Having considered the ample briefing and the applicable law,[1] the Court grants the

Motion for Partial Summary Judgment. The claims for rescission and for compensatory damages

calculated as past payments are unavailable as matters of law. These claimed damages apply to

both Counts I and II. Ms. Keller's other claims applying to those Counts for special damages,

punitive damages, interest, costs, and other relief are unaddressed and, thus, survive.

I.    *Background*

   A. *Procedural Background*

This case is a contract dispute between former spouses arising out of the terms of their

divorce. Ms. Keller alleges that Mr. Arrieta violated the Non-Disclosure and Non-

Disparagement clause (NDND) of their Marital Settlement Agreement (MSA) when he

introduced covered material into a malpractice lawsuit against his divorce attorneys. *See*

*generally* Second Amended Complaint (Doc. 90). Ms. Keller seeks to remedy that alleged

breach of contract under three different theories. *Id.* at 9–10; *c.f., Herrera v. Herrera*, 1999-

NMCA-034, ¶ 9 ("All settlement agreements are contracts and therefore are subject to contract

law."). First, she argues she is "entitled to rescind" the MSA and be "relieved of her remaining

obligations" as of the filing of the lawsuit on March 23, 2020. *Id.* at 9, ¶ 64. ███████████

███████████████████████████████████████████████

███████████████████████████████████████████████

---

[1] The Court notes diversity jurisdiction per 28 U.S.C. § 1332, and thus applies state substantive
law. The New Mexico Supreme Court instructs that "the law to be applied to a particular
dispute may be chosen by the parties through a contractual choice-of-law provision." *Strausberg*
*v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶ 26. ██████████████████
████████████████████████████████████████████████

███████████████████████████████████████████████████

Second, Ms. Keller contends she has suffered "actual and compensatory damages" in an amount equal to all recurring payments she made under the MSA after Mr. Arrieta's initial breach in September 2017.[2]  (Doc. 90) at 10, ¶ 67.  Third, Ms. Keller urges that she is owed "special damages" based on "personal humiliation, mental anguish, anxiety and embarrassment" incurred from the breach of the NDND.  *Id.* at 10, ¶ 68.

Defendants now seek summary judgment on Ms. Keller's claims for "rescission" of the MSA and "restitution of amounts paid," arguing neither are available as matters of law.  (Doc. 100) at 1; (Doc. 103) at 1; (Doc. 104) at 1–2; (Doc. 108) at 1.  For the sake of clarity, the Court notes Ms. Keller does not herself use the word "restitution"; where Defendants invoke Ms. Keller's claim for "restitution," they refer to her second theory, which she calls "actual and compensatory damages."

The Motions before the Court present the question of what type of damages are properly available for this alleged breach of contract.  The Court agrees with Defendants that neither rescission nor backpay—whether called restitution or compensatory damages—are available damages here.  The Court does not address the claim for special damages.

*B.  Legal Standard*

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in their favor, the movant establishes that there is no genuine dispute of material fact and that the movant is entitled to

---

[2] Mr. Arrieta alleges that Ms. Keller ceased making payments in March or April, 2020.  *E.g.*, (Doc. 23) at 6, ¶ 10; (Doc. 100) at 3.  That cessation of payments is the subject of a counterclaim for breach of contract by Mr. Arrieta against Ms. Keller.  (Doc. 23) at 7.

3

judgment as a matter of law. *Sawyers v. Norton*, 962 F.3d 1270, 1282 (10th Cir. 2020); Fed. R. Civ. P. 56(a).

A general principle at summary judgment is that the ultimate standard of proof is relevant for purposes of determining if there is a genuine issue. That is, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). Here, Plaintiff brings this case to enforce the MSA, and "[a] party seeking judicial enforcement of a contract bears the burden of persuasion." *Farmington Police Officers Ass'n Commc'n Workers of Am. Loc. 7911 v. City of Farmington*, 2006-NMCA-077, ¶ 16. "[W]here the meaning of a material contract term is in dispute a party seeking affirmative relief based upon its interpretation necessarily bears the burden of establishing that its interpretation controls." *Id.* Applied to this case, that rule means that, although Defendants bear the overall burden on their Motion, the Court must "bear in mind" that Plaintiff Keller carries the ultimate burden of establishing her interpretation of the MSA.

Here, the operative facts are not much in dispute, but the parties do disagree about the meaning of the MSA's terms and what remedies are available. So, the Court determines, as matters of law, whether the MSA is ambiguous and whether rescission and backpay are proper measures of damages.

II.    *Discussion*

A. *The Marriage Settlement Agreement is Clear and Unambiguous*

The Court begins with the parties' alternative readings of the MSA.

4

As an initial matter, the Court notes that whether a contract contains an ambiguity is a question of law for a court to decide. *Mark V, Inc. v. Mellekas*, 1993-NMSC-001, ¶ 12. If a contract is found to be ambiguous, the meaning to be assigned to the unclear terms presents a question of fact for a jury. *Id.; see also C.R. Anthony Co. v. Loretto Mall Partners*, 1991-NMSC-070, ¶ 11. However, when a contract is clear as written, a court "must give effect to the contract and enforce it as written." *Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 11.

New Mexico courts have held that "a contract is deemed ambiguous only if it is reasonably and fairly susceptible of different constructions." *Levenson v. Mobley*, 1987-NMSC-102, ¶ 7 (citing *Vickers v. North Am. Land Devs., Inc.*, 1980-NMSC-021, ¶ 9). Put another way:

> The standard to be applied in determining whether a contract is subject to equally logical but conflicting interpretations is the same standard applied in a motion for summary judgment. If the evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law, and summary judgment would be proper. On the other hand, if the court determines that the contract is reasonably and fairly susceptible of different constructions, an ambiguity exists, and summary judgment would not be proper.

*Randles v. Hanson*, 2011-NMCA-059, ¶ 26 (quoting *McNeill v. Rice Eng'g & Operating, Inc.*, 2003-NMCA-078, ¶ 13). "The mere fact that the parties are in disagreement on construction to be given to the contract does not necessarily establish an ambiguity." *Levenson*, 1987-NMSC-102, ¶ 7.

"In making its determination, the court must consider the agreement as a whole." *Id.* at ¶ 7 (citing *Shaeffer v. Kelton*, 95 N.M. 182, 185, 619 P.2d 1226, 1229 (1980)). Stated with more

5

specificity, New Mexico courts "view a contract as a harmonious whole, give meaning to every provision, and accord each part of the contract its significance in light of other provisions." *Pub. Serv. Co. of New Mexico v. Diamond D Const. Co.*, 2001-NMCA-082, ¶ 19.

The Court may consider evidence outside the four corners of the contract in making its preliminary determination—the circumstances around contracting, usage of trade, course of performance, etc. *Mark V, Inc.*, 1993-NMSC-001, ¶¶ 11–12; *C.R. Anthony Co.*, 1991-NMSC-070, ¶ 15. It need not do so, however, because "the court may resolve any ambiguity as a matter of law by interpreting the contract using accepted canons of contract construction and traditional rules of grammar and punctuation." *Mark V, Inc.*,1993-NMSC-001, ¶ 13.

The Court finds the MSA is clear and unambiguous and does not require further interpretation.[3]



---

[3] Ms. Keller submitted exhibits with her Response that allegedly go to her view of the parties' intent, but the Court does not consider them because the terms of the contract are not ambiguous, and therefore "need only be applied, rather than construed or interpreted." *Levenson*, 1987-NMSC-102, ¶ 7 (citing *McKinney v. Davis*, 1972-NMSC-077). Absent an ambiguity, the court "is not at liberty to divine an intention to the language used that is not present." *Vickers v. N. Am. Land Devs., Inc.*, 1980-NMSC-021, ¶ 9. That is, "where the terms of an agreement are plainly stated, the intention of the parties must be ascertained from the language used." *Levenson*, 1987-NMSC-102, ¶ 7 (citing *Hoge v. Farmers Market & Supply Co.*, 1956-NMSC-044).

Case 1:20-cv-00259-KG-SCY Document 208-1 Filed 04/25/22 Page 7 of 23



The Court finds that the plain purpose of the MSA, viewed as a whole, is to terminate the marriage, avoid litigating the divorce, and unwind the parties' community property. Conversely, the Court is unpersuaded by Ms. Keller's argument that the term "property settlement" is ambiguous. A contract "is not rendered ambiguous merely because a term is not defined; rather, the term must be interpreted in its usual, ordinary, and popular sense ... and may be ascertained from a dictionary." *Battishill v. Farmers Alliance Ins. Co.*, 2006-NMSC-004, ¶ 8. The term "property settlement" has a straightforward meaning. *See* PROPERTY SETTLEMENT, Black's Law Dictionary (11th ed. 2019) ("A contract that divides up the assets of divorcing spouses and is incorporated into a divorce decree.").



The Court concludes there is no genuine dispute of material fact regarding the contract: it is a comprehensive marriage settlement agreement and

### B. The Claim for Rescission

The Court concludes rescission would be improper. Generally, contracts must be repudiated completely or not at all. *E.g., Ford v. Norton*, 1927-NMSC-067, ¶ 7 (explaining general rule that "right to rescind must be exercised in toto.... The contract must stand in all its

provisions, or fall together"); *State ex rel. State Highway & Transp. Dep't v. Garley*, 1991-NMSC-008, ¶ 12 (calling the rule "well-settled" in New Mexico). The parties appear to agree that total rescission is not practically possible in this case because the marital property has been divided, certain assets have been sold, and debts have been paid. (Doc. 90) at 8, ¶¶ 46–48; (Doc. 100) at 10. Perhaps it goes without saying that neither party seems keen to undo the divorce decree and return to matrimony. Ostensibly, the parties also do not wish to avoid the benefit of the NDND going forward.

Indeed, New Mexico law is quite clear that the bar is very high to undo a MSA. A voluntary marital settlement agreement entered into by both spouses, dividing their community property as they see fit, is sacrosanct and will not be upset by the court "absent fraud, duress, mistake, breach of fiduciary duty, or other similar equitable grounds for invalidating an agreement." *Herrera v. Herrera*, 1999-NMCA-034, ¶ 18 (quoting *Ruggles v. Ruggles*, 1993-NMSC-043, ¶ 60).

Certain exceptions at contract law may allow partial rescission. One exception occurs when a contract is severable or divisible, and another arises in the event of a "material" breach. Here, both exceptions fail on their own terms. In addition, rescission is unavailable because the domestic relations exception prevents this Court from considering such disruption to a settled state divorce decree. The Court addresses the jurisdictional bar first followed by each type of partial rescission on the merits.

> i.    *The Domestic Relations Exception*

Generally, the "domestic relations exception" divests federal courts of the power to issue divorce, alimony, and child custody decrees. *Leathers v. Leathers*, 856 F.3d 729, 756 (10th Cir. 2017). The exclusion includes reopening, reissuing, correcting, or modifying settled state

divorce decrees. *Id*. On the other hand, a federal court may enforce a divorce decree according to its terms. *Id*.

This Court previously heard a challenge to its jurisdiction on these grounds. Motion to Dismiss for Lack of Jurisdiction (Doc. 24). The Court, in its Memorandum Opinion and Order entered January 15, 2021, denied that motion, reasoning that to the extent the complaint asked the Court to enforce the MSA, the Court properly had jurisdiction. (Doc. 79) at 8. The Court nonetheless reserved judgment on the question whether rescission would reopen or modify the MSA and therefore violate the domestic relations exception to federal jurisdiction:

> In contesting this Court's jurisdiction to enforce the parties' Agreement, Mr. Arrieta focuses on Ms. Keller's request for "rescission of the contract from the filing of the original Complaint relieving the parties from any further obligations thereunder." *See* (Doc. 22) at 10. Mr. Arrieta argues that "rescission" of the parties' Agreement is not a viable remedy because canceling the contractual obligations would undermine the state court's ability to decide these matters in the first instance. (Doc. 24) at 1-6. However, the Court notes that Ms. Keller does not evoke rescission of the parties' Agreement as a separate cause of action in her Amended Complaint; rather, it is asserted as a proposed "remedy." *See* (Doc. 22) at 10. At this juncture, Ms. Keller's causes of action remain pending, and, any argument regarding the viability of Ms. Keller's requested remedy is, thus, premature. Instead, the question of remedies is better suited for after adjudication of Ms. Keller's claims and Mr. Arrieta's counterclaims.

*Id*. at 9.

Though the claims have not yet been fully adjudicated, the Motion for Summary Judgment now puts the issue of rescission squarely before the Court, so the Court addresses it. The Court concludes rescission would be akin to modifying or undoing the MSA and the divorce decree. *C.f.*, RESCISSION, Black's Law Dictionary (11th ed. 2019) (defining rescission as the "unmaking of a contract" or to "terminate a contract"). Thus, this Court is without authority to enforce such a remedy even if it may have jurisdiction to otherwise adjudicate the case insofar as it seeks to enforce the MSA's express terms.

ii.     *Partial Rescission is not Available because the Contract is Not Severable*

Though the Court determines it cannot enforce rescission of the MSA, it nonetheless addresses the parties' arguments about partial rescission on the merits. One way to partially resciss a contract is to find the contract's terms are "severable" or "divisible." *See, e.g.*, *Ford v. Norton*, 1927-NMSC-067, ¶ 7 ("A partial rescission may therefore be allowed where the contract is a divisible one"); *Dasburg, Application of*, 1941-NMSC-024, ¶ 29; *State ex rel. State Highway & Transp. Dep't v. Garley*, 1991-NMSC-008, ¶ 12; *accord* Restatement (Second) of Contracts § 383 (1981). "A severable or divisible contract has been defined as one under which the whole performance is divided into two sets of partial performances, each part of each set being the agreed exchange for a corresponding part of the set of performances to be rendered by the other promisor." *Arrow Gas Co. of Dell City, Tex. v. Lewis*, 1962-NMSC-145, ¶ 25.





In the first instance, the Court found the contract unambiguous and therefore cannot reach beyond the four corners of the contract to draw any conclusions about the parties' intent. Instead, the Court determines the contract, by its own express terms, is not severable.

Before explaining the law on point, the Court notes Ms. Keller's argument that the cases relied on by Defendants are federal cases which ought not be controlling to the extent they conflict with New Mexico law. (Doc. 111) at 11. The Court indeed recognizes that in *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 708 F. Supp. 2d 1209 (D.N.M. 2010), the District Court applied Delaware law and in *City of Raton v. Arkansas River Power Authority*, 760 F.Supp.2d 1132, (D.N.M. 2009), that court applied Colorado law. This Court will not rely on those statements of the law.

Regardless, New Mexico caselaw is clear and in accord with Delaware and Colorado law. Whether a contract is divisible is a question of law. *Arrow Gas Co.*, 1962-NMSC-145, ¶ 23. The determination "is largely a question of construction" and depends on the contract's "language and subject matter." *Dantonio v. Crowder*, 2011-NMCA-017, ¶ 21 (quoting *Walters*

12

*v. U.S. Fid. & Guar. Co. of Baltimore, Md.*, 1930-NMSC-042). Put another way, "the determinative factor in deciding whether or not a contract is divisible is the intent of the parties *as revealed by the terms of the contract*." *Id.* at ¶ 22 (emphasis added) (citing 15 Richard A. Lord, *Williston on Contracts* § 45:5, at 279 (4th ed. 2000)).

"There is a presumption against finding a contract divisible, unless divisibility is expressly stated in the contract itself, or the intent of the parties to treat the contract as divisible is otherwise clearly manifested." *Dantonio*, 2011-NMCA-017, ¶ 22 (quoting 15 Richard A. Lord, Williston on Contracts § 45:4, at 275 (4th ed. 2000)). The reason for restricting the availability of partial rescission is because "a party cannot repudiate a contract or compromise so far as its terms are unfavorable to him and claim the benefit of the residue." *Ford*, 1927-NMSC-067, ¶ 7.





The Court, therefore, concludes that the MSA is not severable because the language of the MSA shows the parties did not intend "to have performance of the contract in parts and have the performance of a part on one side the price or exchange of a corresponding part on the other." *Arrow Gas Co.*, 1962-NMSC-145, ¶ 25. Divisibility is not "expressly stated" and no such intent is "clearly manifested." The presumption against divisibility holds. The Court finds the contract, as a matter of law, is entire and not severable.

      *iii.*     *Partial Rescission is not Available Because the Court Finds No Material Breach*

A second way to arrive at partial rescission is to find that a party committed an uncured material breach which destroyed the purpose of the contract. *E.g., Famiglietta v. Ivie-Miller Enterprises, Inc.*, 1998-NMCA-155, ¶ 14 (adopting rule that material breach allows avoidance of remaining performance); *Robison v. Katz*, 1980-NMCA-045, ¶¶ 11–14 (allowing rescission without complete restoration to pre-contract relationship). The Court concludes this form of

partial rescission is also unavailable because no reasonable fact finder could find a material breach.

Generally, a breach of contract does not excuse the nonbreaching party of its obligation to perform, unless a breach is "material." *KidsKare, P.C. v. Mann*, 2015-NMCA-064, ¶ 20 ("A material breach of a contract excuses the non-breaching party from further performance under the contract."). "[T]he materiality of a breach is a specific question of fact." *Famiglietta*, 1998-NMCA-155, ¶ 16 (citing *Lukoski v. Sandia Indian Management Co.*, 1988-NMSC-002, ¶ 3).

New Mexico Courts have defined a "material" breach as "the failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." *Famiglietta*, 1998-NMCA-155, ¶ 17 (internal quotations and citations omitted). In the first instance, this Court is unpersuaded that the NDND is so fundamental that its breach defeats an essential purpose of a comprehensive and complex marriage and property settlement agreement.

Even if the Court concluded that the NDND is fundamental such that a breach could defeat an essential purpose of the MSA, the Court would still conclude that no material breach occurred. The *Famiglietta* court adopted the Restatement's five factors for deciding the materiality of a breach of contract:

(1) the extent to which the injured party will be deprived of the benefit he or she reasonably expected to receive from the contract;

(2) the extent to which the breaching party will suffer forfeiture if the breach is deemed material;

(3) whether the injured party can be adequately compensated in damages for the breach;

15

(4) the likelihood that the breaching party will cure his or her failure to perform under the

contract; and,

(5) whether the breaching party's conduct comported with the standards of good faith and

fair dealing.

*Id.* at ¶ 18 (citing Restatement (Second) Of Contracts § 241).

With respect to the first *Famiglietta* factor, while Ms. Keller has been deprived of one

benefit of the MSA (confidentiality), she has not been deprived of the main benefit of the

contract—unwinding the marital property and terminating the marriage. This factor therefore

weighs against materiality.

Second, ████████████████████████████████████

████████████████████████████████████████████

████████ (Doc. 100) at 3. The Court notes the following advice from the Restatement:

> [I]f the defendant's breach is relatively minor in the context of the overall
> undertaking, and if the injury to the plaintiff is appropriately remedied by an award
> of damages, the same consequences of rescission might impose an unacceptable
> and punitive forfeiture. If the plaintiff (having suffered a loss of $5) could threaten
> to impose a loss of $100 on the defendant by seeking rescission instead of $5
> damages, the availability of rescission would become a source of costly
> opportunism. The requirement of repudiation or material breach is a safeguard
> against this misuse of a remedy that is intended as a shield and not a sword.

Restatement (Third) of Restitution and Unjust Enrichment § 37 (2011). Thus, this factor weighs

heavily against finding materiality.

Third, damages are available to compensate for the alleged breach. While monetary

damages may be difficult to compute for a violation of an NDND clause, there can be both

compensatory and special damages here, which Ms. Keller pleads in her Second Amended

Complaint. *See* (Doc. 90) at 13. This factor similarly weighs against materiality.

16

Fourth, whether Mr. Arrieta has cured, or can cure, the alleged violation of the NDND is in dispute. Ms. Keller, in her Second Amended Complaint, alleges that Mr. Arrieta repeatedly breached the NDND until the end of his malpractice case from September 27, 2017, until July 30, 2019. (Doc. 90) at ¶ 24. She also, however, describes his breach as "ongoing." *Id.* at ¶¶ 24, 67. She has not produced any facts supporting that conclusion. For his part, Mr. Arrieta has not answered the Second Amended Complaint, but in his answer to the First Amended Complaint, he admitted entering confidential material into prior litigation, but denied otherwise breaching the NDND. *See* (Doc. 23) at ¶¶ 11–19. The Court determines that Mr. Arrieta is probably unable to cure the breach in a traditional sense—once a public disclosure is made, a bell has been rung which cannot be un-rung. This factor is muddy, but weighs slightly in favor of materiality.

Fifth, the fact that Mr. Arrieta's alleged breach does not appear to have persisted outside of the prior litigation is dispositive of bad faith action. *Sanders v. FedEx Ground Package Sys., Inc.*, 2008-NMSC-040, ¶ 7 (explaining that violation of good faith and fair dealing "requires a showing of bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party"). Indeed, Mr. Arrieta's alleged breach of the NDND occurred in unique circumstances—during litigation and by representatives whom he has now pulled in as third-party defendants. All this weighs against finding bad faith and against finding a material breach.

Given the combined weight of all the factors, the Court finds that no reasonable jury could find there was a material breach. There can be no avoidance of further obligations without a material breach that would destroy the purpose of the contract,. Here, an alleged violation of the NDND clause of a complex MSA did not undermine the entire contract. Thus, partial rescission of ongoing obligations is not available.

In addition, the interest of justice weigh against allowing partial rescission.

> Rescission ostensibly requires each party to return to the other whatever has been received by way of performance (§ 54(2)), but the practical impossibility of a perfect two-way restoration—and the need to decide in every case how much leeway to permit—means that the availability of rescission depends to an important degree on judicial discretion. See § 54, Comment *b*. The underlying test, once this discretion is acknowledged, is whether "the interests of justice are served by allowing the claimant to reverse the challenged transaction instead of enforcing it."

Restatement (Third) of Restitution and Unjust Enrichment § 37 (2011). Here, given the disproportionality between rescission and enforcement, the Court concludes that enforcement better serves the interests of justice.

### C. *The Claim for Backpay or Restitution*

The parties here dispute whether backpay is better understood as a form of compensatory damages (Ms. Keller's claim), reliance damages (Ms. Keller's alternate claim), or restitution (Defendants' claim). Either way, Ms. Keller claims backpay as damages, and Defendants move for summary judgment on the issue. The Court concludes that backpay is indeed not available here either because restitution is unavailable as a matter of law or because backpay is an improper measure of damages in this case.

█████████████████████████████████████████████████████████
██████████████████ And "New Mexico law does not address the proper measure of damages for the breach of a confidentiality clause." *Harvey v. THI of New Mexico at Albuquerque Care Center, LLC*, No. 12-cv-727, 2015 WL 13667110, *3 (D.N.M. 2015). Accordingly, the Court proceeds by applying New Mexico common law regarding contract damages.

### i. *Backpay as Compensatory Damages*

If backpay is considered a measure of compensatory damages, as Ms. Keller argues it should be, then it is an improper measure of damages. (Doc. 90) at ¶ 67. "As a general

principle, the purpose of contract law is to compensate the nonbreaching party for the damages caused by the breaching party's nonperformance." *Paiz v. State Farm Fire & Cas. Co.*, 1994-NMSC-079, ¶ 30 (citing *Romero v. Mervyn's*, 1989-NMSC-081, ¶ 30 (discussing "[t]he general rule limiting recovery in contract cases to compensatory damages")). The New Mexico Supreme Court has stated "that in an action for breach of contract, the breaching party is justly responsible for all damages flowing naturally from the breach." *Sunnyland Farms, Inc. v. Cent. New Mexico Elec. Co-op., Inc.*, 2013-NMSC-017, ¶ 11 (internal quotation omitted).

In New Mexico, damages come in two types: general or compensatory damages and special or consequential damages. Damages that arise naturally and necessarily as the result of the breach are "general damages," which give the plaintiff whatever value he or she would have obtained from the breached contract. *Id.* at ¶ 11 (internal citation omitted). Put another way, compensatory damages place the plaintiff "in the position [she] would have been in if the contract had been performed." UJI 13-843 NMRA.

Here, returning payments made under the MSA is an improper measure of compensatory damages because those payments did not flow naturally from any breach of the NDND clause nor were they a foreseeable result of breaching that clause. The payments are a contractual duty. That duty precedes the breach, and it is distinct from the breach. That is, the NDND is not a condition precedent to the payments. It therefore does not follow that a preexisting obligation is a "damage" flowing from a breach—especially a non-material breach such as this.

The Court does not determine that compensatory damages are generally unavailable to Ms. Keller. This decision is cabined to the determination that backpay specifically is an inappropriate measure of damages.

     *ii.*     *Backpay as Reliance Damages*

Though Ms. Keller claims backpay as "actual and compensatory damages" in her Second

Amended Complaint, (Doc. 90) at 13, she adds a new argument in her Response.

████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

Ms. Keller cites to *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887

F.3d 1003, 1026 (10th Cir. 2018), *as revised* (Apr. 13, 2018), for this proposition, however that

case applies Colorado law. *Id.*

Reliance damages have been defined by New Mexico courts as the plaintiff's "interest in

being reimbursed for loss caused by reliance on the contract by being put in as good a position as

he would have been in had the contract not been made." *Plan. & Design Sols. v. City of Santa*

*Fe*, 1994-NMSC-112, ¶ 32 (quoting Restatement (Second) of Contracts § 344(b) (1981)). New

Mexico's uniform jury instruction defines reliance damages as the "reasonable cost to plaintiff of

having relied on the contract, less any loss which plaintiff would have sustained had the contract

been fully performed." UJI 13-852 NMRA.

Reliance damages are also inappropriate here because, as has already been discussed,

returning the parties to a position as if the contract had never been performed would be

impossible. Compensatory damages, special damages, and/or enjoinment are all available and

preferable to reliance damages. To the extent Ms. Keller claims reliance damages, they are not

available as a matter of law.

---

4  ████████████████████████████████████████████████████████

████████ The Court does not address that issue here.

### iii.    Backpay as Restitution

If backpay is not a measure of damages, then it would only be available as restitution.

And if the backpay is construed as restitution, then it is not available as a matter of law. The

Court need not belabor this point because

While the Court does not necessarily construe the backpay as restitution, the Court agrees

with Defendants that restitution would be improper in this case for the following reasons.

First, equitable claims are not available if there is an adequate remedy at law. *See e.g.,*

*Sims v. Sims,* 1996-NMSC-078, ¶ 28; *c.f. Martin,* 2014-NMCA-114, ¶ 11 ("Restitution is an

equitable remedy"). "The restitutionary goal is to prevent unjust enrichment of the defendant by

making him give up what he wrongfully obtained from the plaintiff." *Martin v. Comcast*

*Cablevision Corp. of California, LLC,* 2014-NMCA-114, ¶ 11 (quoting Dan B. Dobbs, *Law of*

*Remedies* § 1.1, at 4 (2d ed.1993)). Damages for unjust enrichment differ from compensatory

damages in that "[t]he measure of compensatory damages is the plaintiff's loss or injury, while

the measure of restitution is the defendant's gain or benefit." *Id.* Ms. Keller brings claims for

compensatory damages and special emotional distress damages, both of which are adequately

remedied at law.

Second, restitution is improper for the same reason that rescission is improper—such a

remedy is disproportionate to the alleged breach. Despite Ms. Keller's claim that her request for

backpay damages is alternative to her claim for rescission, the Court notes that often rescission

and restitution logically go together in the event of material breach. The Court here again turns

to the Restatement, which advises that:

21

> Rules governing the availability of "rescission and restitution" are usually stated as if cases of different kinds were subject to a uniform test, but this is plainly not the reality. "Rescission and restitution" is much more readily available when a claimant seeks to escape from a defective agreement (typically, a contract induced by fraud) than when the claimant seeks an alternative to damages for material breach within the rule of this section. In a case of rescission for fraud, there is no need to protect the parties' reliance on the contractual exchange, because there is no valid contract to protect. In a case of rescission for breach, by contrast, the court must be persuaded that the advantages of rescission as an alternative to enforcement outweigh its costs in terms of contractual instability and potential forfeiture.

Restatement (Third) of Restitution and Unjust Enrichment § 37 (2011). Here, the Court is persuaded that rescission and restitution are laden with greater instability, inefficiency, and inequity than simply enforcing the MSA as it exists. *C.f.*, *Tom Growney Equip., Inc. v. Ansley*, 1994-NMCA-159, ¶ 10 (holding restitution not available to equipment repair shop for work done without owner's authorization because "[w]e cannot remedy one wrong by inflicting a still greater injustice on another").

Finally, backpay would be inappropriate under any theory of damages because it would provide an inappropriate windfall to Ms. Keller. New Mexico Courts have "expressed an unwillingness to award windfall damages in contract actions." *Eker Bros. Inc. v. Rehders*, 2011-NMCA-092, ¶ 18 (citations omitted). "It is a fundamental tenet of the law of contract remedies that, regardless of the character of the breach, an injured party should not be put in a better position than had the contract been performed." *Paiz v. State Farm Fire & Cas. Co.*, 1994-NMSC-079, ¶ 30 (citing 3 E. Allan Farnsworth, *Farnsworth on Contracts* § 12.8, at 189–90 (1990)).

Case 1:20-cv-00259-KG-SCY   Document 206   Filed 04/25/22   Page 23 of 23

*III.    Conclusion*

The MSA is unambiguous and not severable, no material breach occurred which destroyed the purpose of the contract, and unwinding the contract completely would be impossible. The Court therefore concludes that rescission, restitution, and backpay are not available remedies as a matter of law. Accordingly, Defendants' Motion for Summary Judgment is granted.

Out of an abundance of caution, the Court enters this Memorandum Opinion and Order under seal. The parties are ordered to submit proposed redactions within 14 days of entry of this Order or it will be filed publicly.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE