IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RACHEL KAY KELLER,

    Plaintiff,

v.                                                                                                  Civ. No. 20-0259-KG/SCY

ANDREW F. ARRIETA,

    Defendant/Third-Party Plaintiff,

v.

COOPER & SCULLY, PC; ERIC HINES;
WESLEY G. JOHNSON; TOM CARSE; and
SEAN P. McAFEE,

    Third-Party Defendants.

MEMORANDUM OPINION AND ORDER

    This matter is before the Court on Third-Party Defendants' Joint Motion for Summary Judgment. (Doc. 257). That Motion was fully and timely briefed, with then-Plaintiff Rachel Kay Keller responding in opposition. (Docs. 296, 311). Defendant/Third-Party Plaintiff Andrew Arrieta originally joined the Motion when it was directed against Ms. Keller, (Doc. 259), but the Court recently allowed him to withdraw that joinder, (Doc. 344) at 5, when he took the position the Motion was moot. The Court, having considered the briefing, the applicable law, and the history of the case, denies the Motion.

I.    *Background*

    This case, which before contained two connected claims, is now reduced to one. The action began when Plaintiff Rachel Kay Keller sued Defendant Andrew Arrieta for allegedly breaching the Non-Disclosure Non-Disparagement (NDND) clause of their Marriage Settlement

Agreement (MSA). *See* (Doc. 1). The Court will refer to that as the first-party claim or the contract claim. Because the alleged breach of contract occurred during separate litigation, Mr. Arrieta filed a Third-Party Complaint against his former attorneys from that lawsuit for malpractice for exposing him to the contract claim. (Doc. 23). The first-party contract claim between Mr. Arrieta and Ms. Keller settled before trial, (Docs. 332, 337, 348), leaving only the third-party malpractice claim between Mr. Arrieta and the Third-Party Defendants.

Because the instant Motion for Summary Judgment was directed at the first-party claim while it was still pending, it has a unique posture which affects its disposition in two ways. First, there was a question as to the Motion's vitality. So, after Mr. Arrieta and Ms. Keller settled, the Court entertained argument and briefing on whether the Motion remained relevant. Status Conference (Doc. 342); Order for Supplemental Briefing (Doc. 344); Arrieta's Response (Doc. 355); Third-Party Defendants' Response (Doc. 384); Tom Carse Joinder of Third-Party Defendants' Response (Doc. 388). Mr. Arrieta argued it was moot because Third-Party Defendants were required to indemnify him and therefore the only question remaining was the reasonableness of the settlement. (Doc. 355). The Third-Party Defendants, in turn, argued that the Third-Party Complaint states a claim for malpractice and therefore required proving negligence, which rendered the substance of the instant Motion relevant. (Doc. 384). Presented those arguments, the Court agreed with the Third-Party Defendants that the Third-Party Complaint stated a claim for professional negligence rather than indemnification and therefore ruled that defenses bearing on the Third-Party Defendants' liability were still available and the Motion was relevant. (Doc. 406).

Second, turning to the substance of the Motion, the Court is confronted with a question about how to analyze the defenses presented. The question arises because although the Third-

Party Defendants are the proponents of the Motion, their defenses are directed at Ms. Keller's first-party breach of contract claim against Mr. Arrieta. The Third-Party Defendants urge that "[Ms. Keller]'s claims must be dismissed," (Doc. 257) at 2, and because her original claim must be dismissed against Mr. Arrieta, the Third-Party Defendants must also be relieved of any liability and granted summary judgment, *id.* at 10.

This unique configuration was possible because this case presents cascading, albeit distinct, liabilities. First, Mr. Arrieta was allegedly liable to Ms. Keller on a breach of contract theory. And second, Third-Party Defendants, who purportedly exposed Mr. Arrieta to that contract claim, are allegedly liable to Mr. Arrieta for professional negligence. The Court notes that even though the two defenses raised in the Motion are defenses to the antecedent contract claim rather than defenses applicable directly to the subsequent malpractice claim, those defenses are still partially live. That is, showing there was no breach of contract in the first instance remains a potential defense to malpractice here, so any defense which would operate as an absolute bar on the breach of contract claim would also bar the malpractice claim. This is true regardless of the settlement of the first-party claim because that settlement does not establish the fact that a breach of contract did or did not occur, or operate as an adjudicated finding of liability against Mr. Arrieta. *See* Stipulated Order of Dismissal (Doc. 348).

Given this peculiar situation, the Court will analyze both whether the claimed defenses could undermine the existence of a breach of contract and whether they can otherwise operate as a defense to malpractice.

II.   *Analysis*

In the Motion, the Third-Party Defendants argue for summary judgment for two reasons: because the Non-Disclosure Non-Disparagement clause (NDND) is unenforceable due to

unconscionability and because Mr. Arrieta and the Third-Party Defendants are protected from liability by the absolute privilege doctrine. *Generally* (Doc. 257). Notwithstanding the prior ruling that the Motion is relevant to the Third-Party Defendants' liability, the Court now turns to the substance of the Motion and determines that neither of the specific claimed defenses are viable when applied to the malpractice claim.

A.   *Unconscionability*

The Third-Party Defendants argue that the Court should deem the NDND substantively unconscionable and unenforceable. (Doc. 257) at 8–10. Specifically, Third Party Defendants' urge that as "a matter of law then, this [NDND] is invalid for violating public policy as it completely extinguishes Andrew's right to access the courts for claims related to the MSA." *Id.* at 9. And, because "the [NDND] cannot serve as a premise for liability, it naturally follows that the Defendants are entitled to summary judgment." *Id.* at 10.

The Court concludes that unconscionability is not a defense available to the Third-Party Defendants for professional negligence. As a general principle, unconscionability is only a defense to contract claims. *See, e.g., State ex rel. King v. B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 32 ("Unconscionability is an equitable doctrine, rooted in public policy, which allows courts to render unenforceable an agreement… where the contract terms themselves are illegal, contrary to public policy, or grossly unfair." (quotations and citations omitted)). So, unconscionability cannot be a direct defense to malpractice and is only viable to the extent it would operate as a total bar to the contract claim.

The Court concludes that unconscionability would not absolutely prohibit the contract claims as brought in this case. In the first instance, unconscionability does not necessarily invalidate an entire contract or even an entire term. Unconscionability can result in severing a

term from the whole, or in merely refusing to enforce a term where its application would be unconscionable. *See Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 55.

In this case, the Third-Party Defendants argue for striking the NDND from the MSA in its entirety. (Doc. 257) at 10. But the Court is not persuaded that the NDND is so infected by one-sided or facially unconscionable terms that it need be struck entirely. Third-Party Defendants' most persuasive argument is that the NDND is unconscionable as against public policy where it prevented Mr. Arrieta (or Ms. Keller, presumably) from even speaking to lawyers or accessing courts to litigate his prior malpractice claim. (Doc. 257) at 9 ("A strict reading indicates that the [NDND] precludes even a general legal inquiry with anyone who was not counsel of record at its signing, making this agreement grossly unreasonable").

Even if the Court agreed that the NDND was unconscionable where it prevented Mr. Arrieta from speaking to lawyers and chose not to enforce the NDND to that extent, that ruling would not cover all of the alleged breaches of the NDND, and in particular not those breaches allegedly caused by the Third-Party Defendants. The Third-Party Defendants are not alleged to have exposed Mr. Arrieta to contract liability merely for speaking to him, or even for filing the lawsuit in the abstract; they are allegedly liable to Mr. Arrieta for exposing him to a breach of contract where they filed covered material publicly on the federal docket or shared it with other individuals. (Doc. 23) at 11, ¶ 9. This Court does not find the NDND unconscionable where it demands that details of the MSA not be published publicly. To do so would undermine the purpose and benefit of the NDND.

Because unconscionability would not have extinguished the contract claims where covered material was disclosed publicly, and because that is the portion of the contract claim for

which the Third-Party Defendants are allegedly responsible, unconscionability cannot be a defense to the professional negligence claim.

B. *Absolute Privilege Doctrine*

The absolute privilege defense also struggles to find footing when applied to the third-party negligence claim. The Court concludes the Third-Party Defendants are not protected by the privilege because New Mexico courts only apply that privilege to defamation and not to legal malpractice.

In New Mexico, the absolute privilege doctrine, also known as the litigation privilege, "grants immunity to litigants and their attorneys from being sued for *defamation*" for statements made in the course of litigation. *Helena Chem. Co. v. Uribe*, 2012-NMSC-021, ¶ 1 (emphasis added); *see also Chavez-Neal v. Kennedy*, 2021-NMCA-015, ¶¶ 8–12 (explaining history and parameters of privilege). The Third-Party Defendants urge this Court to predict that the New Mexico Supreme Court would expand the privilege to contract claims like Ms. Keller's. (Doc. 257) at 12–16; *see also Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) (establishing that federal courts sitting in diversity must apply stay substantive law); *and Latham v. Bd. of Educ. of Albuquerque Pub. Sch.*, 489 Fed. Appx. 239, 244 (10th Cir. 2012) (explaining that where state law unclear, court may "predict how New Mexico's highest court would rule"). The Third-Party Defendants argue that the New Mexico Supreme Court would expand the privilege based on authority from other states. (Doc. 257) at 12–14.

The Court does not find that the New Mexico Supreme Court would necessarily expand the privilege, at least not as applied here. The cases cited by Third-Party Defendants expanded the litigation privilege to torts and contract claims where expansion promoted the purpose of the privilege—to allow zealous advocacy and pursuit of claims without fear of future liability. (Doc.

6

257) at 12 (citing *Moss v. Parr Waddoups Brown Gee & Loveless*, 285 P.3d 1157 (Utah 2012), 13 (citing *State Farm Mut. Auto v. Slade Healthcare, Inc.*, 381 F.Supp.3d 536 (D.Md. 2019). But the Court does not read any of those cases as creating a blanket litigation privilege protecting from violations of confidentiality agreements. And the Court notes that Ms. Keller responded by citing to cases that have explicitly rejected the privilege for confidentiality claims. (Doc. 296) at 15 (citing *Wentland v. Wass*, 126 Cal. App. 4th 1484, 1494 (2005)); *see also ITT Telecom Products Corp. v. Dooley*, 214 Cal. App. 3d 307 (1989) (holding the litigation privilege does not apply to statements in breach of an express contract of confidentiality or nondisclosure). In *Wentland*, the California court reasoned that "[j]ust as one who validly contracts not to speak waives the protection of the anti-SLAPP statute, so too has he waived the protection of the litigation privilege." 126 Cal. App. 4th at 1494. That court concluded that "[t]he policies behind the litigation privilege are not furthered by its application in this case," and "here application of the privilege would frustrate the purpose of the [confidentiality] agreement." *Id.*

This Court anticipates that the New Mexico Supreme Court would reason similarly, balancing the interest in litigating freely, *Penny v. Sherman*, 1984-NMCA-073, ¶ 14, against the interest of enforcing valid contracts, *United Wholesale Liquor Co. v. Brown-Forman Distillers Corp.*, 1989-NMSC-030, ¶ 14, and similarly find that a wholesale litigation privilege against claims of violating confidentiality clauses would undermine the purpose and benefit of those agreements.

Though it was not briefed, the Court considers briefly whether the New Mexico Supreme Court would expand the absolute privilege doctrine to protect lawyers from malpractice claims premised on their speech or conduct in litigation. The Court declines to make that inference, finding it unlikely the New Mexico Supreme Court would give lawyers essentially blanket

immunization from professional liability. The Court bases its conclusion on the persuasive reasoning and weight of authority from other states which have considered the question. *See, e.g.*, *Greenberg Traurig v. Frias Holding Co.*, 130 Nev. 627, 631, 331 P.3d 901, 904 (2014) (adopting a legal-malpractice exception to the litigation privilege); *Buchanan v. Leonard*, 428 N.J. Super. 277, 287, 52 A.3d 1064, 1070 (App. Div. 2012) (holding "that the litigation privilege does not apply to a client's malpractice claim against his or her attorney[.]"); *Kolar v. Donahue, McIntosh & Hammerton*, 145 Cal. App. 4th 1532, 1541, 52 Cal. Rptr. 3d 712, 719 (2006) (declining to extend litigation privilege to malpractice action, noting "if it also protected an attorney from any suit by a former client, no malpractice suit could be brought").

III.     *Conclusion*

Because neither unconscionability nor the litigation privilege are defenses to the remaining professional negligence claim, the Court denies the Third-Party Defendant's Motion for Summary Judgment (Doc. 257).

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE